No. 12486

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

JOANN G. HOUGH,

Defendant and Respondent.

---

Appeal from:   District Court of the Fourth Judicial District,
Honorable Edward T. Dussault, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
J. C. Weingartner, Assistant Attorney General, appeared,
Helena, Montana
Robert L. Deschamps III, ~~Deputy~~ County Attorney, Missoula,
Montana
Michael J. Milodragovich, Deputy County Attorney, argued,
Missoula, Montana

For Respondent:

Donald R. Matthews argued, Missoula, Montana

---

Submitted:   September 11, 1973

Decided: OCT 2 4 1973

Filed: OCT 2 4 1973

_Thomas J. Kearney_
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

Defendant was charged with unlawful possession of dangerous drugs in the district court of Missoula County. She moved to suppress the evidence seized by the Missoula County sheriff's office. From the order of the district court suppressing the evidence, the state appeals.

Briefly stated the facts are as follows: On January 20, 1973, deputy sheriffs Frojen and Churchwell of Missoula County were patrolling an area in Missoula, Montana. The deputies, who work for the drug team, were driving an unmarked car and wearing plain clothes. Defendant was hitchhiking on Brooks Street in Missoula. The officers stopped and picked her up. They identified themselves to defendant as bill collectors and expressed to her an interest in buying some drugs. Defendant told the officers she had extensive involvement with drugs, but she did not have any with her at that time and did not know where the officers could obtain any.

While driving around for a period of time, the officers urged defendant to let them know where they could get some narcotics. Defendant told the officers that she really didn't know many people in Missoula.

The officers estimated defendant's age to be 15 or 16 because she looked extremely young. Defendant stated her age was 19 years and that her first name was Ginnie. Suspecting defendant was a runaway juvenile the officers identified themselves as deputy sheriffs. Defendant told them she was 18 and not 19 years of age and gave the officers a welfare card and a check guarantee card for identification. The welfare card identified the subject as JoAnn Hough.

The welfare card revealed the subject had two children. Defendant was unable to accurately state the children's birthdates upon being questioned by the officers. She was asked if she had graduated from high school. She stated she had graduated, but could not remember the year in which she graduated.

The officers brought defendant to the sheriff's office for the

purpose of identifying her, to contact her parents and inform them that their daughter had been located. While at the sheriff's office Officer Churchwell examined the contents of defendant's purse. The officers claim that defendant had no objection to them going through her purse. Officer Churchwell testified that defendant voluntarily handed him the purse, although he did not explain to her that she had any alternative. Defendant claims she objected to their going through her purse.

Officer Churchwell dumped the contents of defendant's purse out on the desk. He opened a zippered purse which was in the larger purse and therein found the drugs. Defendant exclaimed, "Well, you have got me now," but there is a conflict as to when this statement was made.

The officer discovered a quantity of hashish and marijuana. Defendant was then formally arrested and advised of her rights.

An evidentiary hearing was held on defendant's motion to suppress the evidence. The district court, the Hon. Edward T. Dussault presiding, suppressed the seized drugs on the grounds that the search and seizure was unreasonable.

The single issue presented on appeal is whether the drugs were properly seized by the deputy sheriffs.

The 4th Amendment to the Constitution of the United States and Art. III, § 7, Montana Constitution of 1889 (Art. II, § 11, Montana Constitution of 1972) protects citizens from "unreasonable searches and seizures."

Section 95-701, R.C.M. 1947, states:

"A search of a person, object or place may be made and instruments, articles or things may be seized in accordance with the provisions of this chapter when the search is made:

"(a) As an incident to a lawful arrest.

"(b) With the consent of the accused or of any person who is lawfully in possession of the object or place to be searched, or who is believed upon reasonable cause to be in such lawful possession by the person making the search.

"(c) By the authority of a valid search warrant.

"(d) Under the authority and within the scope of a right of lawful inspection granted by the law."

The state presents three alternatives for finding that the drugs were properly seized. First, the state argues there was no search under the circumstances of this case as the term is defined in its 4th Amendment sense.

This Court in State v. Williams, 153 Mont. 262, 269, 455 P.2d 634, said:

> " * * * we find that a 'search' has been held to imply an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action; it implies an exploratory investigation or quest. (Citing authority.) In the aggregate,a 'search' in its 4th Amendment sense simply denotes (1) a quest by an officer of the law (Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652) (2) with an intention of find (United States v. Lodahl, D.C.Mont. 264 F.Supp. 927), (3) which invades a constitutionally protected area (Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399); Weeks v. United States, supra)."

In the instant case the officers testified that the drugs were discovered in an attempt to identify the defendant. There was no "examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action". Under the foregoing definition  there was no "search" under the facts of this case. The question presented, however, is whether the seizure was proper, and the state argues that it was under the "plain view" doctrine.

In the recent case of State v. Gallagher, _____Mont._____, 509 P.2d 852, 30 St.Rep. 467, 476, this Court said:

> "The rule is:  Where there is prior justification for the police to search an area, and in searching the area, they inadvertently find incriminating evidence which they had no reason to anticipate, they may lawfully seize that incriminating evidence." (Citing authority.)

In Gallagher the sheriff was searching the house for a prowler when he entered the bedroom of defendant and noticed the evidence. In finding that the sheriff's reason for being in defendant's bedroom was lawful and that the evidence seized clearly came within the "plain view" doctrine,

- 4 -

we quoted extensively from the United States Supreme Court decision of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L ed 2d 564, which thoroughly discusses the "plain view" doctrine, its rationale and application. In Coolidge at 29 L ed 2d 564, 583, the Court said:

> "The rationale for the 'plain view' exception is evident if we keep in mind the two distinct constitutional protections served by the warrant requirement. First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. (Citing authority.) The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. (Citing authority.) * * *

> "The 'plain view' doctrine is not in conflict with the first objective because plain view does not occur until a search is in progress. In each case, this initial intrusion is justified by a warrant or by an exception such as 'hot pursuit' or search incident to a lawful arrest, or by an extraneous valid reason for the officer's presence. * * *"

The question in this case becomes whether there was a "prior justification" for the officer to be in defendant's purse. There was no warrant for another object. Hot pursuit was not involved. Was there an extraneous valid reason for the officer's presence in the purse, or pursuant to section 95-701(d), R.C.M. 1947, was the inspection under the authority and within the scope of a right granted by law? Let us examine the facts in more detail.

After the officers identified themselves, defendant showed the officers her welfare card and told them that she lived on Sussex street where she had a birth certificate. Before going to the sheriff's office the trio drove within a few blocks of the Sussex address. In response to questions asked of Officer Churchwell concerning going to the house on Sussex, the officer gave the following answers:

> "Q. And would it have been much trouble to go to her house to check out the birth certificate part of it?
> A. That's not usually how we operate.

"Q. Well -- A. I wouldn't have done it that way, no.

"Q. You obviously didn't do it that way; but would it have been much trouble for you to have done that? A. It could have been done.

"Q. Fairly easy, could it not? A. Yes."

Defendant told the officers that her sister lived with her at the Sussex address and that her sister could prove defendant's identification. She also told them that her parents lived in Warm Springs. Officer Churchwell could not remember whether or not he called defendant's parents. He testified as follows:

"Q. Mr. Churchwell, is it usual for you to phone the parents when you bring a juvenile in? A. I often do that, yes.

"Q. Don't you do that most of the time, practically every time? A. Yes, sir.

"Q. Did you phone JoAnn's parents? A. No -- I'm not sure whether I did or not. I really don't remember.

"Q. If I told you that she told me, and she found out from her folks that you did not, would you believe that? A. Yes, sir."

Officer Frojen did not call defendant's parents. Defendant's sister was called later in the evening. The drugs were discovered before she arrived.

Officer Frojen was handed defendant's wallet while riding in the car. He testified that it was the type of billfold that would hold credit cards, papers and identification. He did not, however, at that time examine the contents of the wallet. Defendant testified that the zippered purse in which the drugs were found was a make-up bag.

According to Officer Churchwell, he asked for other identification from the defendant than what she had produced. Defendant informed him that what she had given to the officer was all that she had with her.

Officer Churchwell was asked what the normal procedure is with a suspected runaway juvenile. He said:

"A. Normally I take them to the office; in the case of run-away juveniles, take them to the office, interview them briefly and then advise them that I am going to

- 6 -

call their parents. I obtain a phone number from them
and call the parents."

It was the officers' responsibility to identify the defendant
and notify the proper parties. We observe from the facts, however, that
the officers had several opportunities by which they could obtain identification. Present in this case is an apparent deviation from the normal
procedure for identifying the defendant. This deviation cannot extend
into constitutionally protected areas and be justified for the purpose of
proving identification. Noticeably, the available and more reliable
alternatives were not pursued by the officers. There was no valid reason
for the officer's presence in the defendant's purse, and the "plain view"
doctrine is not applicable.

In addition, the state argues that the seizure can also be
justified on the basis that there was a search made incidental to an arrest.
We do not overlook the fact that the officers had reasonable grounds to
believe the defendant was a runaway juvenile. Defendant, however, was
not arrested; she was simply taken into custody for the purpose of proving
her identification. We note, as did the district court, that defendant was
not told that even though she was suspected of being a juvenile that she
could call her parents, her sister, the address at Sussex or an attorney.
She was not arrested until after the drugs were found.

There was no search incident to a lawful arrest. Therefore, the
seizure was not proper on this basis and it cannot serve as a prior justification for the "plain view" doctrine.

As a third alternative the state contends that the seizure can be
sanctioned by the Supreme Court of the United States decision in Terry v.
Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L ed 2d 889. In Terry the court justified the "stop and frisk" procedures used by police officers. The doctrine
enunciated in Terry has no application to the facts of this case.

For the foregoing reasons, the order of the district court

- 7 -

suppressing the drugs is hereby affirmed.

_____
                                        Chief Justice

We concur:

_____

_____

_____
Justices


Mr. Justice  John Conway Harrison dissenting:

    I dissent.

_____
                        Justice

- 8 -