IN RE INTEREST OF SHEA B., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. SHEA B., APPELLANT.
532 N.W.2d 52

Filed May 16, 1995.    No. A-94-623.

Thomas M. Kenney, Douglas County Public Defender, and Krista L. Tushar for appellant.

James S. Jansen, Douglas County Attorney, and Ray W. Daniel for appellee.

SIEVERS, Chief Judge, and MILLER-LERMAN, Judge, and WARREN, District Judge, Retired.

MILLER-LERMAN, Judge.

Shea B., a boy aged 14, appeals from the order of the separate juvenile court of Douglas County adjudicating him a child as defined under Neb. Rev. Stat. § 43-247(1) and (2) (Reissue 1993). The issues on appeal in this case involve the sufficiency of the evidence in support of the court's conclusion that, by proof beyond a reasonable doubt, Shea had violated Neb. Rev. Stat. § 28-517 (Reissue 1989), by receiving stolen property valued at over $1,500, and Neb. Rev. Stat. § 28-1202(1) (Reissue 1989), by carrying a concealed weapon. Because we find the evidence sufficient, we affirm the order of adjudication.

## SCOPE OF REVIEW

■ The Nebraska Supreme Court has recently iterated that an appellate court reviews juvenile proceedings

"de novo on the record and is thus required to reach a conclusion independent of the juvenile court's findings; provided, however, that where the evidence conflicts, [an appellate] court considers and may give weight to the juvenile court's observation of the witnesses and acceptance of one version of facts over another." *In re Interest of R.G.*, 238 Neb. 405, 424, 470 N.W.2d 780, 793 (1991). See *In re Interest of Jones*, 230 Neb. 462, 432 N.W.2d 46 (1988).

*In re Interest of J.A.*, 244 Neb. 919, 923, 510 N.W.2d 68, 72 (1994).

## FACTS

An adjudication hearing was conducted on June 10, 1994, on the charges indicated above and others which are not the subject of this appeal. Seven witnesses, including Shea, testified.

Linda Harris testified that unidentified persons had attempted to steal her car in October 1993, and the car was damaged in the process. Ebony Dishmon testified that she witnessed the attempted theft of Harris' car and that Shea was one of the youths involved in the incident. Henry Elker testified that on December 8, 1993, his 1987 Nissan Sentra was stolen from his driveway while warming up on a cold morning, that he

did not see the perpetrators, and that the insurance company paid him $3,500 or $3,700 in settlement.

Officer Brian Smith of the Omaha Police Division testified that he was investigating the Harris incident when on December 9, 1993, he learned that Shea, a suspect in the Harris incident, had been arrested at McMillan Junior High School on charges of carrying a concealed weapon. Smith intercepted the officers making the arrest and interviewed Shea at police headquarters at 505 South 15th Street in Omaha. A rights advisory form, read by Smith to Shea, was received in evidence. Smith testified that Shea admitted to him in the interview that he had the keys to the Elker vehicle, that another juvenile had stolen the car, that Shea had been driving the Elker vehicle and told the police where the vehicle could be found, and that the Elker Nissan was found in the obscure location indicated by Shea.

Thomas Lowndes, an assistant principal at McMillan Junior High School, testified that on December 9, he had received information that a student had told a counselor that Shea had a knife, and that together with a security officer, Lowndes opened Shea's locker and found a $10\frac{1}{2}$-inch knife in Shea's coat in the locker. Lowndes stated that upon his confronting Shea, the juvenile admitted that he brought the knife to school because "[p]eople keep messing with me." The police and Shea's mother were called. Lowndes stated that it was possible for students to get combinations to other students' lockers. Lowndes also stated that the knife was not within Shea's reach when found in the locker. Lowndes testified that the students were wearing coats to school on December 9.

Officer Mark Hanner of the Omaha Police Division stated that he responded to a radio call to go to McMillan Junior High School on December 9 in connection with a weapons charge and that when he went to the school's office, Lowndes recited the circumstances of finding the knife and gave the officer the weapon. After checking with police headquarters, Hanner arrested Shea for carrying a concealed weapon and transported him to police headquarters.

Shea testified on his own behalf. He denied participating in the attempted theft of the Harris vehicle. In connection with the Elker car theft, he testified that he was holding the keys so

another youth, "Ramone," could go to gym class. Shea testified that Ramone had indicated that the keys were to his aunt's car. Shea denied having told Smith that he had driven the Elker vehicle. Shea did not testify regarding the weapons charge.

## ASSIGNMENTS OF ERROR

Shea claims that the evidence is insufficient to support a finding that he (1) received stolen property valued at over $1,500 and (2) carried a concealed weapon. Shea, therefore, claims that he was improperly adjudicated.

## ANALYSIS

*Receipt of Stolen Property Valued at Over $1,500.*

Although an adjudication is not a criminal proceeding, we take guidance from the criminal law of this state. Section 28-517 states, "A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner." A theft constitutes a Class III felony when the value of the thing involved is over $1,500. Neb. Rev. Stat. § 28-518(1) (Cum. Supp. 1994). Section 28-518(8) provides, "In any prosecution for theft under sections 28-509 to 28-518, value shall be an essential element of the offense that must be proved beyond a reasonable doubt." In a juvenile proceeding, the applicable juvenile statute provides that the criminal burden of proof shall apply:

> After hearing the evidence on such question, the court shall make a finding and adjudication, to be entered on the records of the court, whether or not the juvenile is a person described by subdivision (1), (2), (3)(b), or (4) of section 43-247 based upon proof beyond a reasonable doubt.

Neb. Rev. Stat. § 43-279(2) (Reissue 1993).

On appeal, Shea argues that the evidence is insufficient as to the value of the Elker vehicle. The State argues that the value of the Elker car was adequately proven. In the alternative, the State argues that value is not an element of a theft offense, but only relates to grading of offenses in a criminal case. In support

of this argument, the State cites *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992). The State further contends that in this juvenile proceeding where there is satisfactory proof that Shea received stolen property, the grading of the theft is irrelevant because the juvenile upon being adjudicated becomes subject to a disposition involving a rehabilitation plan in his best interests and is not subject to a conventional criminal sentence.

With respect to the theft, we agree with the trial court that there was proof beyond a reasonable doubt that Shea received stolen property. Although Shea denied driving the Elker car, Smith testified that Shea had Elker's keys, admitted he had driven the vehicle, and directed the police to an obscure location where the Elker car was found. Shea's knowledge that the vehicle was stolen could be inferred from the circumstances. See *State v. LaFreniere*, 240 Neb. 258, 481 N.W.2d 412 (1992).

With respect to the value of Elker's car, a 1987 Nissan Sentra, the evidence is as follows: Elker testified that "[t]he insurance company paid my loan off which was right around [$]3,500, $3,700." Elker further testified that he had purchased the vehicle "brand new" in December 1987.

Under older cases, the value of the stolen goods was deemed an essential element of a theft crime. See, e.g., *State v. Hayes*, 187 Neb. 325, 190 N.W.2d 621 (1971). However, in 1989, the Nebraska Supreme Court clearly held that the value of stolen property was not an element of the crime because value was not specified by the statute defining theft, and, therefore, value was important only in determining the penalty. *State v. Culver*, 233 Neb. 228, 444 N.W.2d 662 (1989). Thus, in criminal cases where value was not considered an element and where the proof of value was found insufficient on appeal, the Nebraska Supreme Court upheld the conviction notwithstanding a direction to remand the cause for a retrial on value. See, e.g., *State v. Wright*, 231 Neb. 410, 436 N.W.2d 205 (1989) (holding that where proof was sufficient to support a finding of receipt of a stolen vehicle, the conviction would be upheld, but that because sales contract did not meet business records exception and was inadmissible, proof was insufficient on value, and cause would be remanded for a new trial on the issue of the value of the stolen property).

In *Garza, supra,* cited by the State, the Nebraska Supreme Court found that the items in question had been shoplifted by the defendant and that their value went only to grading the offense. The court held that price tags of $85, $170, $130, and $152 on the shoplifted goods were insufficient proof of value, but concluded, nevertheless, that the clothing items in question had some intrinsic value that translated into nominal market value. Accordingly, the Nebraska Supreme Court in *Garza* remanded the cause to the district court with a direction to impose a sentence for misdemeanor theft of property with a value less than $100, a Class II misdemeanor.

In 1992, the Nebraska Legislature passed 1992 Neb. Laws, L.B. 111, which added § 28-518(8) to the article including criminal theft statutes. Section 28-518(8) provides: "In any prosecution for theft under sections 28-509 to 28-518, value shall be an essential element of the offense that must be proved beyond a reasonable doubt." The plain language of § 28-518(8) reinserts "value" as an element of theft by receiving stolen property under § 28-517. The legislative history corresponding to the introduction of the amendment which became § 28-518(8) is consistent with this reading. Floor Debate, L.B. 111, Judiciary Committee, 92d Leg., 2d Sess. 8968 (Feb. 13, 1992). It has been stated that

> [t]he Legislature, in enacting [an amendatory] statute, is presumed to have known the preexisting law, and [it is presumed] that the language was intentionally changed for the purpose of effecting a change in the law itself. In any event, the Legislature has the power to change the above provisions if it so desires.

*State v. Suhr,* 207 Neb. 553, 561, 300 N.W.2d 25, 29 (1980). Accordingly, we conclude that value is currently an essential element of the crime of theft by receiving stolen property.

The testimony regarding value of the stolen 1987 Nissan recited above shows that Elker bought the vehicle new in 1987, and in answer to the question asking Elker for his opinion as to the value of the car, he indicated that he received $3,500 or $3,700 from the insurance company to pay off the loan after the car was stolen. Shea argues that this evidence is insufficient proof of value. We do not agree.

In theft cases, it has long been the law that an owner may give testimony relating to value. *State v. Holland*, 213 Neb. 170, 328 N.W.2d 205 (1982). It is also the case that an owner may testify as to the value of a vehicle involved in an accident. *Kristensen v. Reese*, 220 Neb. 668, 371 N.W.2d 319 (1985). The amount of insurance reimbursement commonly provides proof in addition to an owner's testimony regarding value. See, e.g., *State v. Taylor*, 196 Conn. 225, 492 A.2d 155 (1985). Only where there is no evidence to establish the basis of reimbursement by an insurance company will reference to insurance proceeds be found insufficient. *State v. Hayes*, 187 Neb. 325, 190 N.W.2d 621 (1971). Given the facts of this case and applicable law, we find that the trial court properly concluded that Shea violated § 28-517 by receiving stolen property valued at over $1,500.

Under § 43-247 of the Nebraska Juvenile Code,

> [t]he juvenile court in each county . . . shall have jurisdiction of:
> (1) Any juvenile who has committed an act other than a traffic offense which would constitute a misdemeanor or an infraction under the laws of this state, or violation of a city or village ordinance;
> (2) Any juvenile who has committed an act which would constitute a felony under the laws of this state.

There is proof beyond a reasonable doubt that Shea's actions "would constitute a felony under the laws of this state." Therefore, we conclude that Shea was properly adjudicated under § 43-247(2).

*Carrying a Concealed Weapon.*

Shea claims on appeal that the evidence is insufficient to support a finding that he carried a concealed weapon. Although we recognize that this is a juvenile proceeding, we take guidance from the criminal law of this state in evaluating this assignment of error.

Under § 28-1202(1) and (3), it shall be a Class I misdemeanor if a person "carries a weapon or weapons concealed on or about his or her person such as a revolver, pistol, bowie knife, dirk or knife with a dirk blade attachment, brass or iron knuckles, or

any other deadly weapon." The evidence in this case shows that the knife in question was a black-handled stainless steel hunting knife with a total length of 10$^1$/$_2$ inches and a sawtooth blade. The knife was received in evidence, and the record contains a photograph thereof. There is no doubt that the knife was a "weapon" under § 28-1202(1).

Lowndes testified without objection that Shea "admitted to bringing the knife to school," that the knife was found in Shea's coat in a locker, that the children were wearing coats to school on December 9, 1993, and that "[w]hen asked why [he brought the knife], he [Shea] stated, People keep messing with me. And we [school officials] took from that that he brought it for protection." Shea did not testify regarding the allegation of carrying a concealed weapon.

On appeal, Shea argues that the evidence is insufficient to support a finding that he carried a concealed weapon because the record is devoid of evidence regarding the manner in which the knife got to school. Specifically, Shea claims that the evidence is insufficient on the element that the weapon, which according to Lowndes he "admitted to bringing . . . to school," was concealed.

In support of his appellate argument, Shea relies on cases, not repeated here, involving solely circumstantial evidence in which the inferences were taken in favor of the accused on appeal. We find those cases inapposite because the evidence in this case does not consist exclusively of circumstantial evidence. Compare *State v. Skalberg*, 247 Neb. 150, 526 N.W.2d 67 (1995).

Shea also relies on *In Interest of O.B.*, 851 S.W.2d 718 (Mo. App. 1993), in which a juvenile originally alleged to have carried a concealed weapon was found to have violated Missouri's criminal statute prohibiting carrying a gun into a school. This case is inapposite because the charge in the petition in the instant case was not amended, nor did the State seek to proceed under the Student Discipline Act, see Neb. Rev. Stat. § 79-4,180 (Reissue 1994), or other statutory provisions.

In a criminal case, one violates § 28-1202(1) by carrying a concealed weapon. It has been held that § 28-1202(1)

does not require possession . . . but only that an individual

carry the weapon. Black's Law Dictionary 214 (6th ed. 1990) defines carrying arms or weapons as wearing, bearing, or carrying them "upon the person or in the clothing or in a pocket, for the purpose of use, or for the purpose of being armed and ready for offensive or defensive action in case of a conflict with another person." *State v. Blackson*, 1 Neb. App. 94, 98, 487 N.W.2d 580, 583 (1992).

Based on the direct and indirect evidence in the record and relevant jurisprudence, we find that the evidence and the inferences properly taken therefrom sufficiently support the conclusion that the knife was a weapon for purposes of § 28-1202(1), that Shea carried it to school, and that it was concealed in his coat at the time of the offense. The fact that the weapon was not within Shea's reach at the time it was found in his locker is of no consequence. See *State v. Saccomano*, 218 Neb. 435, 355 N.W.2d 791 (1984) (upholding a conviction for carrying a concealed weapon where the defendant had been stopped for driving while intoxicated and was in jail when the car was searched and where the search of the vehicle produced a gun under the front seat). Thus, the trial court properly concluded that Shea violated § 28-1202(1) and that jurisdiction existed under § 43-247(1).

AFFIRMED.