IN RE INTEREST OF ADRIAN B., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. ADRIAN B., APPELLANT.

658 N.W.2d 722

Filed March 25, 2003.   No. A-02-524.

Dennis R. Keefe, Lancaster County Public Defender, and Reggie L. Ryder for appellant.

Gary E. Lacey, Lancaster County Attorney, and Rodney D. Reuter for appellee.

SIEVERS, INBODY, and MOORE, Judges.

INBODY, Judge.

## I. INTRODUCTION

This case involves the appeal of an adjudication of Adrian B. pursuant to Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 2002) for possession of marijuana and possession of drug paraphernalia. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

On February 13, 2002, a petition was filed in the Lancaster County Separate Juvenile Court alleging that Adrian, a child under 18 years of age, was a juvenile as defined by § 43-247(1) for the reasons that on or about February 13, Adrian knowingly or intentionally possessed marijuana weighing 1 ounce or less, in violation of Neb. Rev. Stat. § 28-416(13)(a) (Cum. Supp. 2002), and that on the same date, Adrian used, or possessed with the intent to use, drug paraphernalia to manufacture or inject, ingest, inhale, or otherwise introduce into the human body a controlled substance, in violation of Neb. Rev. Stat. § 28-441 (Reissue 1995).

On February 20, 2002, a denial was entered and the matter was set for formal hearing. Prior to the formal hearing, Adrian filed a motion to suppress alleging that evidence and statements were obtained in violation of Adrian's constitutional rights, and the hearing on that motion was held on February 28. The sole witness at the hearing was Lincoln police officer Julie Pucket.

Officer Pucket testified that on February 13, 2002, she was contacted by the Goodrich Middle School (Goodrich) principal, who reported that Adrian, who was on runaway status, was inside the school. Officer Pucket knew that Adrian was not currently a student at Goodrich, and she verified that Adrian was a runaway.

Once Officer Pucket arrived at Goodrich, she made contact with Adrian, who was in a counselor's office. Officer Pucket testified that once she entered the counselor's office, Adrian was not free to leave. Officer Pucket had Adrian give her his coat, which he either was wearing or had within his reach, and she patted down the outside of the coat.

Officer Pucket testified that she had had significant contacts with Adrian in her capacity as a school resource officer for 3

years and that during the last year, she had had approximately 90 contacts with Adrian. She further testified that her reasons for conducting the search were that because of her prior contacts with Adrian, she was aware that Adrian had been noncompliant, did not follow rules or listen to authority figures, and was disruptive in the classrooms, and that she was concerned for officer safety and the safety of the students and staff at the school. However, Officer Pucket testified that she was not familiar with Adrian's carrying any weapons. On cross-examination, Officer Pucket testified that she had no basis to believe that Adrian was armed or dangerous and that she considered everyone to be "a potential threat."

Officer Pucket initially patted down the exterior pockets of Adrian's coat. She felt the edge of a blade in the right front coat pocket. Officer Pucket "suspected" that the item was a knife, and she removed the item from the coat pocket. The item turned out to be a pocketknife with a 3-inch blade.

Officer Pucket then flipped the coat over to search the other exterior pocket, at which time a small marijuana "roach" fell out of the right front coat pocket, which was the same pocket from which she had removed the pocketknife. Officer Pucket also located Zig-Zag papers, a wrapping for marijuana cigarettes, in the right front coat pocket. After searching the coat, Officer Pucket, believing Adrian might have a weapon or additional contraband on him, conducted a search of Adrian's person, which resulted in the confiscation of a cigarette lighter. After Officer Pucket's discovery of these items, Adrian was lodged at a juvenile detention facility.

On April 22, 2002, the juvenile court overruled Adrian's motion to suppress evidence. The court found:

> The officer had authority to take Adrian . . . into custody without a warrant as the officer had reasonable grounds to believe Adrian was a runaway. The officer was justified in making a brief patdown of Adrian based on the totality of the circumstances including the officer's previous contact with Adrian, Adrian's prior non conformity [sic] with rules known to the officer, her knowledge that Adrian was not a student at the school at the time of the incident, and his status as a runaway that allowed her to take him into custody

and for officer safety. The officer's search could include Adrian's coat as it was within Adrian's reach at the time of search and would presumably go with Adrian when he left the school.

The officer's search revealed a weapon, that the officer was able to identify as a risk to the officer and others present, by feeling the exterior of Adrian's coat. The officer was justified in proceeding with the search.

In the process of proceeding with the search, the officer flipped over Adrian's coat and an item fell from the coat to the floor. The officer recognized the item as marijuana, illegal contraband, and properly seized the marijuana. Further search of Adrian was warranted and "zig-zag" papers were then located in Adrian's pocket.

An adjudication hearing was held on April 19, 2002. The evidence considered consisted of Officer Pucket's testimony at the suppression hearing and a stipulation that based upon Officer Pucket's training and experience, she believed that the substance that she located in Adrian's coat was marijuana and that Zig-Zag papers such as were located in Adrian's coat are commonly used to inhale a controlled substance. Further, the parties stipulated that Adrian's date of birth was January 1, 1989, and that the events alleged in the February 13, 2002, adjudication petition occurred in Lancaster County, Nebraska.

Adrian renewed the issues raised in the motion to suppress, which motion had been overruled. The juvenile court found that the allegations contained in the adjudication petition were true beyond a reasonable doubt and adjudicated Adrian as a juvenile as defined by § 43-247(1). Adrian has timely appealed to this court.

### III. ASSIGNMENT OF ERROR

On appeal, Adrian contends that the juvenile court erred in overruling his motion to suppress.

### IV. STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless

searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Manning*, 263 Neb. 61, 638 N.W.2d 231 (2002). The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Burdette*, 259 Neb. 679, 611 N.W.2d 615 (2000).

## V. ANALYSIS

As noted above, Adrian contends on appeal that the juvenile court erred in overruling his motion to suppress physical evidence seized. Although an adjudication is not a criminal proceeding, we take guidance from the criminal laws of this state. *In re Interest of Frederick C.*, 8 Neb. App. 343, 594 N.W.2d 294 (1999); *In re Interest of Cory P.*, 7 Neb. App. 397, 584 N.W.2d 820 (1998); *In re Interest of Shea B.*, 3 Neb. App. 750, 532 N.W.2d 52 (1995).

### 1. APPLICABILITY OF FOURTH AMENDMENT

First, we consider the applicability of the Fourth Amendment to the U.S. Constitution in the instant case. A seizure in the Fourth Amendment context occurs when, " " " 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " ' " *In re Interest of Andre W.*, 256 Neb. 362, 366, 590 N.W.2d 827, 830 (1999) (quoting *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997)). Further, " '[w]henever a police officer restrains an individual's liberty by force or some show of authority, the officer has "seized" that person for purposes of the fourth amendment.' " *In re Interest of Andre W.*, 256 Neb. at 366, 590 N.W.2d at 830 (quoting *State v. Caples*, 236 Neb. 563, 462 N.W.2d 428 (1990)).

Officer Pucket testified that once she arrived at Goodrich and made contact with Adrian, he was not free to leave. Thus, the protection against unreasonable searches and seizures guaranteed by the Fourth Amendment applies to this case, necessitating an examination of whether Adrian's constitutional rights were violated.

## 2. CONSTITUTIONALITY OF SEARCH

We consider whether the pat-down search of Adrian was constitutional. The State has argued that the following exceptions to the search warrant requirement normally predicated by due process were applicable in this case: an investigatory detention, a search incident to a lawful arrest, and consent.

### (a) Investigatory Detention

An officer who reasonably believes that a person is armed and dangerous is entitled for the protection of himself or herself and others to conduct a carefully limited search of the outer clothing of such person in order to discover weapons which may be used to assault him or her. See, *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *In re Interest of Andre W., supra*; *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997).

In determining whether an officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that is given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of his or her experience. *State v. Ellington*, 242 Neb. 554, 495 N.W.2d 915 (1993); *State v. Coleman*, 10 Neb. App. 337, 630 N.W.2d 686 (2001). Whether a police officer has a reasonable suspicion based on sufficient articulable facts requires taking into account the totality of the circumstances. *State v. Ellington, supra*; *State v. Coleman, supra*.

The evidence established that Officer Pucket was familiar with Adrian from her 3 years as a school resource officer and that in the past year, she had had more than 90 contacts with him. From these contacts, Officer Pucket was aware of Adrian's history of not complying with rules and authority figures. She was also aware that Adrian was not a student at Goodrich and that Adrian was a runaway.

However, Officer Pucket testified that she was not familiar with Adrian's carrying weapons. Further, Officer Pucket testified that she had no basis to believe that Adrian was armed or dangerous. Based upon the totality of the circumstances, there is not sufficient evidence to establish that Officer Pucket reasonably believed that Adrian was armed and dangerous; consequently, she was not entitled to conduct a pat-down search on that basis, and this

exception to the warrant requirement cannot be relied upon to support Officer Pucket's search of Adrian's coat and his person.

(b) Search Incident to Juvenile's Temporary Custody

Next, we consider whether the search was justified as a search incident to Officer Pucket's taking temporary custody of Adrian pursuant to Neb. Rev. Stat. § 43-248(5) (Reissue 1998). The question of whether a search incident to temporary custody of a juvenile pursuant to § 43-248(5) may be performed presents an issue of first impression in Nebraska.

Section 43-248 provides that "[a] juvenile may be taken into temporary custody by any peace officer without a warrant or order of the court when . . . (5) [t]here are reasonable grounds to believe that the juvenile has run away from his or her parent, guardian, or custodian." "No juvenile taken into temporary custody under section 43-248 shall be considered to have been arrested, except for the purpose of determining the validity of such custody under the Constitution of Nebraska or the United States." Neb. Rev. Stat. § 43-249 (Reissue 1998).

Other courts have considered whether a search incident to temporary detention may be performed on juveniles who are "in custody" but have not been arrested. In *State ex rel. J.M.*, 339 N.J. Super. 244, 249, 771 A.2d 651, 654 (2001), the New Jersey Superior Court recognized a " 'search incident to detention' " exception to the warrant requirement but found that in the case before it, the exception was not applicable because the search occurred at the police station, not at the time of the detention, and thus was remote in both time and place from the location of the detention.

In *Matter of Terrence G.*, 109 A.D.2d 440, 492 N.Y.S.2d 365 (1985), the New York Supreme Court considered whether the pat-down search of a juvenile taken into custody was constitutionally permissible. Officers took the juvenile into custody after observing him standing outside a subway station at 12:30 p.m., in a high crime area and in violation of truancy laws. Upon taking him into custody, officers conducted a pat-down search for weapons.

In finding that the pat-down search was permissible, the court stated, "Nothing in the noncriminal appellation of this detention serves to obliterate the dangers of the 'in-custody' situation.

Here, the circumstances of [the juvenile's] detention, coupled with the particularly high duty of protection owed him and other detainees by the runaway statute, were more than ample justification for the patdown." *Id.* at 446, 492 N.Y.S.2d at 370. The court further stated:

> Given the location and nature of [the juvenile's] first encounter with the detaining officers, the fact that he was lawfully in full custody under the authority of a statute that exists solely for his protection and the protection of other children in the detention area, and given the limited nature of the search, we find the legality of that search to be irrefutable. Any other result would undermine the vital purpose of the runaway laws and, in effect, demand of our police officers that they abdicate common sense.

*Id.* at 447-48, 492 N.Y.S.2d at 371.

Other courts have also approved searches of juveniles taken into custody but not arrested. See, *In re J.M.*, 995 S.W.2d 838 (Tex. App. 1999) (officer who took juveniles into custody for violating curfew ordinance could conduct search incident to arrest); *State ex rel. R.D.*, 749 So. 2d 802 (La. App. 1999) (once law enforcement officer has taken juvenile into physical custody, even though offense committed is not defined as "crime," search incident to arrest may properly be conducted in order to ensure that juvenile does not possess weapons or other dangerous instruments). See, also, *People v. Dandrea*, 736 P.2d 1211, 1220 n.1 (Colo. 1987) (Vollack, J., dissenting) (search of juvenile, incident to his being taken into " 'temporary custody,' " is controlled by same search and seizure principles that apply to adult arrests); *People, Int. of B.M.C.*, 32 Colo. App. 79, 506 P.2d 409 (1973); *In re Nancy C.*, 28 Cal. App. 3d 747, 105 Cal. Rptr. 113 (1972) (search incident to arrest of juvenile arrested for violation of curfew ordinance upheld); *State v. Brammeier*, 1 Or. App. 612, 464 P.2d 717 (1970) (search incident to arrest of juvenile taken into custody upheld).

But see, *State v. Paul T.*, 128 N.M. 360, 993 P.2d 74 (1999) (deciding case under New Mexico Constitution, New Mexico Supreme Court rejected State's argument that search incident to arrest exception to warrant requirement justified full search of juvenile taken into custody for curfew violation but not

arrested); *State v. Hough*, 163 Mont. 47, 516 P.2d 613 (1973) (while police had right to take into custody suspected runaway juvenile, search of defendant's purse for purpose of obtaining identification of defendant was not proper where other, more reliable means of obtaining identification were not pursued by police officers, and marijuana and hashish found in purse could not be seized as incident to lawful arrest because defendant was not arrested, but simply taken into custody for purpose of proving her identification); *In Interest of J.F.F.*, 164 Wis. 2d 10, 473 N.W.2d 546 (Wis. App. 1991) (concluding that search of juvenile following "arrest" for violation of curfew ordinance was invalid because police lacked statutory authority to arrest child for violating municipal curfew ordinance).

In Nebraska, one of the stated purposes of our juvenile code is "[t]o assure the rights of all juveniles to care and protection and a safe and stable living environment and to development of their capacities for a healthy personality, physical well-being, and useful citizenship and to protect the public interest." Neb. Rev. Stat. § 43-246(1) (Reissue 1998). It follows that the provisions of § 43-248 which allow peace officers to take juveniles into temporary custody under certain circumstances are in place to protect both the juvenile and the public interest.

■ Allowing a search incident to temporary detention of a juvenile after the juvenile is taken into temporary custody protects the juvenile, law enforcement officers, and others with whom the juvenile may come into contact. Further, denying law enforcement officers the authority to conduct searches of juveniles being taken into temporary custody would require officers to take unnecessary risks in the performance of their duties. Therefore, we hold that when a juvenile is taken into temporary custody pursuant to § 43-248, the peace officer may conduct a search incident to temporary detention. Having determined that a search of a juvenile incident to temporary detention pursuant to § 43-248 is constitutionally permissible, we now consider whether the search of Adrian was proper.

■ Pursuant to a lawful custodial arrest, law enforcement officers may conduct a warrantless search of the person arrested and of the immediately surrounding area in order to remove any weapons that the arrestee may use to resist arrest or effect an

escape and in order to prevent the concealment or destruction of evidence. *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990). See *State v. Roach*, 234 Neb. 620, 452 N.W.2d 262 (1990). We find that this law is equally applicable to searches incident to the lawful temporary detention of juveniles pursuant to § 43-248.

In the instant case, Officer Pucket had the authority to take Adrian into temporary custody pursuant to § 43-248(5) because she had reasonable grounds to believe that he had run away from his parent, guardian, or custodian. Officer Pucket testified that Adrian was not free to leave once she arrived in the counselor's office; thus, Adrian had been detained at that point. Further, once Adrian was detained, Officer Pucket could conduct a search of Adrian's person and the immediately surrounding area in order to remove any weapons and in order to prevent the concealment or destruction of evidence. Thus, the search of Adrian's coat was constitutionally permissible and the motion to suppress was properly denied by the juvenile court.

### (c) Consent

Having determined that the search of Adrian was justified, we need not consider whether Adrian consented to the search. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

### VI. CONCLUSION

Having determined that Adrian's motion to suppress was properly overruled, we affirm the decision of the juvenile court adjudicating Adrian as a juvenile as defined by § 43-247(1).

AFFIRMED.