IN RE INTEREST OF JABRECO G., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
JABRECO G., APPELLANT.

683 N.W.2d 386

Filed July 20, 2004. Nos. A-03-950, A-03-1171.

Dennis R. Keefe, Lancaster County Public Defender, and Margene M. Timm for appellant.

Gary E. Lacey, Lancaster County Attorney, and Daniel D. Packard for appellee.

INBODY, CARLSON, and MOORE, Judges.

CARLSON, Judge.

## INTRODUCTION

This case involves two appeals consolidated for our review, the appeal of an adjudication of Jabreco G. pursuant to Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 2002) for possession of marijuana and an appeal from the subsequent dispositional order entered while the adjudication was pending appeal. For the reasons set forth herein, we affirm the order adjudicating Jabreco and vacate the dispositional order.

## BACKGROUND

In case No. A-03-950, a supplemental petition was filed in the Lancaster County Separate Juvenile Court on January 3, 2003, alleging that Jabreco, a child under 18 years of age, was a juvenile as defined by § 43-247(1) for the reason that on or about December 9, 2002, Jabreco knowingly or intentionally possessed marijuana weighing 1 ounce or less, in violation of Neb. Rev. Stat. § 28-416(13)(a) (Cum. Supp. 2002). On February 21, 2003, Jabreco filed a motion to suppress evidence alleging that evidence was obtained in violation of Jabreco's constitutional rights, and the hearing on that motion was held on April 28. At the start of the hearing, Jabreco made an oral motion to suppress statements he made to a Lincoln Police Department school resource officer, Jerome Blowers. Both motions to suppress were taken up at the hearing. Two witnesses testified at the hearing: Sandra Myers, a detective sergeant with the Lincoln Police Department, and Blowers.

Myers testified that on December 9, 2002, at approximately 12:43 p.m., she was in the area of 30th and P Streets in Lincoln, looking for an individual named Courtney S. in regard to a shooting and robbery that had happened 2 months earlier. Myers had received information that Courtney had been in that area a few days earlier with an individual known as Jonathan H., who lives in the area. Myers drove her unmarked police car through an alley near Jonathan's residence to see whether Courtney, or anyone else whom Myers knew to be associated with Courtney, was outside. Myers knew who Courtney and Jonathan were from prior contacts with them. As she drove down the alley, she saw four young, black, male individuals getting into a car. She recognized one of

the individuals as Jonathan, but she did not recognize the other three. She notified dispatch that she would be out of her police car, gave dispatch her location, and then exited her police car. As she approached the individuals' car, three of the individuals were in the car and the fourth was just starting to get into the rear passenger side of the car. The rear passenger door was open at the time she approached. Myers stood by the passenger side of the car and asked the individuals for identification. While she did so, the individual who was not yet in the car remained outside the car, standing beside her at the rear passenger door. All four individuals told Myers that they did not have identification on them. When Myers asked the individual standing by the car what his name was, he replied "Jabreco," and he then began running northbound.

Myers notified dispatch that one of the individuals she had contacted had taken off running, gave a description of him, and requested backup at her location. She told dispatch that she was remaining with the three other individuals. Myers testified that there was an odor of marijuana coming from either the car or the individuals and that she smelled marijuana both before and after Jabreco took off running. However, Myers could not recall at trial whether she relayed the information regarding the odor of marijuana at the time she called dispatch upon Jabreco's taking off running or relayed that information at a later time.

Blowers testified that he works as a school resource officer for 10 elementary schools. On December 9, 2002, at approximately 12:43 p.m., he was working in uniform at one of his assigned schools when he heard a police radio broadcast stating that Myers would be contacting three or four black, male individuals in a car at a location which was three or four blocks south of the school he was at. Blowers then heard a second radio broadcast stating that one of the individuals Myers was attempting to contact had run from the car and was heading northbound. Blowers also heard a description of the individual who ran. Blowers went outside the school to see whether there was anyone coming into the area matching the description of that individual. He then saw an individual matching the description given by Myers walking northbound on a sidewalk. Blowers got into his police car and proceeded to drive up next to the individual. Blowers then said something to the individual to get his

attention, but he could not recall at trial what he had said. Blowers next parked his car, at which point the individual stopped walking, and got out and walked up to the individual, who was later identified as Jabreco. Standing about 5 feet away from Jabreco, Blowers noticed that Jabreco was breathing heavily and seemed short of breath and that the carotid artery in Jabreco's neck was pulsating. Blowers introduced himself and asked Jabreco whether he needed medical attention, and Jabreco "mumbled or he said no." Blowers then asked Jabreco whether he was out of breath because he had run from a police officer, to which query Jabreco responded in the affirmative. Blowers did not observe any weapons, drugs, or contraband. Blowers then asked Jabreco to walk over to Blowers' police car. Jabreco complied with Blowers' request, and as they were walking over to the car, Jabreco told Blowers that the reason he ran from the police officer was because "he was wanted out of Omaha." Blowers asked Jabreco why he was wanted out of Omaha, and he replied that he was a runaway or a missing person.

After Jabreco said that he was a runaway or missing person, Blowers told Jabreco that he was going to place him in the back of his police car because he ran from Myers and because he indicated that he was wanted out of Omaha. Blowers then did a pat-down search of Jabreco's exterior coat pockets and jeans pockets. Blowers testified that the purpose of the search was to check for weapons or contraband. However, Blowers testified that he did not see any weapons at any time during the stop and did not have any suspicion of weapons based on his observations of Jabreco.

When Blowers was patting Jabreco's right front coat pocket, he felt "little bulky stuff" that "felt a little hard, and then some of it was a little soft." Blowers reached into the pocket and found a small plastic baggie containing marijuana. Blowers testified that prior to the pat-down search, when he and Jabreco were standing by the police car, he detected a strong marijuana smell coming from Jabreco. Blowers further testified that either prior to or at some point during his contact with Jabreco, Myers transmitted over the radio that there was possibly marijuana in the car that Jabreco had run from. Blowers could not recall when he had received this information.

Following the search, Blowers placed Jabreco in the back of his police car. Blowers then called in over his police radio to check whether Jabreco was wanted in Omaha for being a runaway, and based on the information Blowers received, he concluded that Jabreco was not listed as missing or as being a runaway. Blowers testified that only 5 or 6 minutes elapsed between the time at which he exited his police car and the time at which he put Jabreco in the back of his car.

The juvenile court overruled Jabreco's written motion to suppress evidence and his oral motion to suppress his statements to Blowers. An adjudication hearing was held on July 1, 2003. The parties stipulated that Jabreco's date of birth was March 3, 1987, and that venue was proper in Lancaster County. They further stipulated to the chain of custody of the marijuana seized by Blowers from Jabreco and that the marijuana weighed 1.61 grams. The transcript from the hearing on the motions to suppress was received into evidence without objection from Jabreco, but Jabreco renewed the issues raised in his motions to suppress. The juvenile court found that the allegations contained in the supplemental petition were true beyond a reasonable doubt and adjudicated Jabreco as a juvenile as defined by § 43-247(1). Jabreco filed an appeal on August 8.

In case No. A-03-1171, the juvenile court held a disposition hearing on September 9, 2003. It found that it had jurisdiction to enter a dispositional order even though the adjudication was on appeal. The juvenile court ordered that Jabreco be placed on probation for 1 year, with a 6-month review. Jabreco filed an appeal from the dispositional order on October 6. Jabreco filed a motion to consolidate his two appeals, which motion we granted.

## ASSIGNMENTS OF ERROR
Jabreco assigns that the juvenile court erred in (1) overruling his motion to suppress evidence and his motion to suppress statements and (2) determining that it had jurisdiction to enter a dispositional order while the adjudication is on appeal.

## STANDARD OF REVIEW
A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory

stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Soukharith,* 253 Neb. 310, 570 N.W.2d 344 (1997); *State v. Konfrst,* 251 Neb. 214, 556 N.W.2d 250 (1996). The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Burdette,* 259 Neb. 679, 611 N.W.2d 615 (2000); *In re Interest of Adrian B.,* 11 Neb. App. 656, 658 N.W.2d 722 (2003).

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Stoetzel & Sons v. City of Hastings,* 265 Neb. 637, 658 N.W.2d 636 (2003); *Fischer v. Cvitak,* 264 Neb. 667, 652 N.W.2d 274 (2002).

## ANALYSIS

Under his first assignment of error, Jabreco argues that his motions to suppress should have been sustained because the marijuana found on him and the statements he made were results of an illegal investigatory stop. Jabreco contends that the stop was unconstitutional because Blowers did not have a reasonable suspicion that Jabreco had committed or was committing a crime.

■ We must first determine whether Jabreco was "seized" for the purpose of the Fourth Amendment to the U.S. Constitution. If there is no detention or seizure within the meaning of the Fourth Amendment, then the Fourth Amendment safeguard against an unreasonable seizure is not implicated in an encounter between a private citizen and a police officer. *State v. Soukharith, supra; State v. Twohig,* 238 Neb. 92, 469 N.W.2d 344 (1991). It is axiomatic that without a seizure, reasonable suspicion is not required. *State v. Soukharith, supra.* A seizure in the Fourth Amendment context occurs " ' "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." ' " *State v. Twohig,* 238 Neb. at 102, 469 N.W.2d at 351, quoting

*Michigan v. Chesternut*, 486 U.S. 567, 108 S. Ct. 1975, 100 L. Ed. 2d 565 (1988). "'The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.'" *State v. Hicks*, 241 Neb. 357, 361, 488 N.W.2d 359, 363 (1992), quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975).

The parties agree that Jabreco was seized by Blowers either when he was stopped by Blowers on the sidewalk or when Blowers asked him to walk over to his police car. Based on the evidence before us, we conclude that Jabreco was seized when Blowers initially stopped Jabreco as he was walking down the sidewalk. Thus, the protection against unreasonable searches and seizures guaranteed by the Fourth Amendment applies to this case and we must determine whether Blowers had reasonable suspicion of criminal activity to stop Jabreco.

A law enforcement officer may legally conduct an investigatory stop of a person suspected of criminal activity if the officer has a reasonable suspicion based upon articulable facts that the person has been, is, or is about to be involved in criminal activity. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *Terry* held that the public's interest in law enforcement makes it reasonable to detain and question individuals under certain circumstances in which probable cause to arrest is lacking. However, in order to protect an individual's right to personal security free from arbitrary interference by law officers, limited investigatory stops are permissible only upon a reasonable suspicion supported by specific and articulable facts that the person has been, is, or is about to be engaged in criminal activity. *Id.* In determining whether the officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that will be given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of the officer's experience. *Id.* The same standard is applied in determining the propriety of an investigatory stop under Neb. Const. art. I, § 7, which forbids the unreasonable seizure of persons by state authorities. *State v. McCleery*, 251 Neb. 940, 560 N.W.2d 789 (1997); *State v. Ellington*, 242 Neb. 554, 495 N.W.2d 915 (1993). Whether a police officer has a reasonable

suspicion based upon sufficient, articulable facts requires taking into account the totality of the circumstances. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000); *State v. McCleery, supra*. Where the police have reasonable suspicion, they may pursue their investigation either to confirm their suspicion or to dispel the suspicion that crime is afoot. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999).

Jabreco argues that Blowers did not have reasonable suspicion of criminal activity at the time he stopped Jabreco because the only information Blowers had was that Myers contacted three or four black, male individuals in a car; that one of them took off running northbound; and that Jabreco matched the description of the running individual given by Myers. Jabreco points out that although Blowers testified that he received information from Myers that there was possibly marijuana in the car she approached, he could not recall whether he received that information prior to or at some point after stopping Jabreco.

Jabreco relies on *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992), which held that an individual's flight from a police officer, without more, does not give the officer a reasonable suspicion of criminal activity that would justify an investigative stop. The *Hicks* court stated that flight from a police officer can justify an investigatory stop only when coupled with specific knowledge connecting the person to involvement in criminal activity. The *Hicks* court found that because the officers who stopped the defendant therein were not able to point to specific facts corroborating the inference of guilt gleaned from the defendant's flight, the investigatory stop was constitutionally infirm.

Jabreco contends that similarly to the circumstances in *Hicks*, the only information that Blowers had when he stopped Jabreco that created suspicion of criminal activity was that Jabreco had fled from Myers. While the flight from Myers may have been the only information Blowers had at the time of the stop, we must also consider what information Myers had at the time of the radio broadcast stating that Jabreco had fled. An investigative stop, like probable cause, is to be evaluated by the collective information of the police engaged in a common investigation. *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997); *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

"[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information."

*State v. Soukharith*, 253 Neb. at 321-22, 570 N.W.2d at 354, quoting *United States v. Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985). It is irrelevant whether an officer making a stop in reliance on a radio bulletin is aware of the factual foundation for the bulletin, so long as the factual foundation is sufficient to support a reasonable suspicion. *State v. Soukharith, supra.*

Blowers stopped Jabreco based on a radio broadcast from Myers. If Myers' radio broadcast was supported by articulable facts supporting reasonable suspicion, Blowers was justified in stopping Jabreco based on the broadcast, which simply stated that Jabreco had fled from Myers. Myers testified that she smelled marijuana coming from the car she approached or from the four individuals whom she found with that car. She further testified that she noticed the odor both before and after Jabreco fled. We conclude that Jabreco's flight from Myers, coupled with Myers' smelling marijuana, gave Myers reasonable suspicion that Jabreco was involved in criminal activity and distinguishes the present case from *State v. Hicks, supra.* It is irrelevant whether Myers relayed the information regarding the marijuana over the radio before or after Blowers stopped Jabreco. See *State v. Soukharith, supra.* Because Myers had reasonable suspicion that Jabreco was involved in criminal activity, Blowers was justified in relying on the radio broadcast from Myers and, in turn, in stopping Jabreco, asking him questions, and briefly detaining him. Thus, we conclude that the investigatory stop of Jabreco was valid and did not violate Jabreco's constitutional rights.

Jabreco next argues that even if the investigatory stop was justified, the search conducted by Blowers was unconstitutional in that it was not a search permitted on a *Terry* stop. When an officer conducts a valid *Terry* stop, if the officer is justified in believing that the individual stopped is armed and presently dangerous to the officer or to others, the officer may conduct a pat-down search of the individual to determine whether he or she

is carrying a weapon. See *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997), citing *Terry*. If the pat-down search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid and its fruits will be suppressed. *State v. Craven, supra*, citing *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). A search under *Terry* must be carefully limited to a search for weapons, and a search for both weapons and controlled substances is beyond the scope permitted under *Terry*. *State v. Craven, supra; State v. Williams*, 249 Neb. 582, 544 N.W.2d 350 (1996).

■ Jabreco contends that Blowers had no reason to believe that Jabreco was armed or dangerous and that thus, Blowers' pat-down search was not justified under *Terry*. We agree. However, we determine that the search was justified on a different basis. Neb. Rev. Stat. § 43-248(5) (Reissue 1998) allows a peace officer to take a juvenile into temporary custody without a warrant or order of a court when there are reasonable grounds to believe that the juvenile has run away from his or her parents, guardian, or custodian. "No juvenile taken into temporary custody under section 43-248 shall be considered to have been arrested, except for the purpose of determining the validity of such custody under the Constitution of Nebraska or the United States." Neb. Rev. Stat. § 43-249 (Reissue 1998). In *In re Interest of Adrian B.*, 11 Neb. App. 656, 658 N.W.2d 722 (2003), this court addressed whether a search incident to temporary detention under § 43-248 may be performed on juveniles who are "in custody" but have not been arrested. The court reasoned:

> Allowing a search incident to temporary detention of a juvenile after the juvenile is taken into temporary custody protects the juvenile, law enforcement officers, and others with whom the juvenile may come into contact. Further, denying law enforcement officers the authority to conduct searches of juveniles being taken into temporary custody would require officers to take unnecessary risks in the performance of their duties.

*In re Interest of Adrian B.*, 11 Neb. App. at 665, 658 N.W.2d at 729. The court held that when a juvenile is taken into temporary custody pursuant to § 43-248, the peace officer may conduct a search incident to temporary detention. It further held that the

law regarding a warrantless search pursuant to a lawful custodial arrest is equally applicable to searches incident to the lawful temporary detention of juveniles pursuant to § 43-248. Thus, a law enforcement officer may conduct a search of the juvenile taken into temporary custody and of the immediately surrounding area in order to remove any weapons that the juvenile may use to resist custody or effect an escape and in order to prevent the concealment or destruction of evidence.

In the instant case, once Jabreco stated to Blowers that he was a runaway or a missing person, Blowers had reasonable grounds to believe that Jabreco had run away from his parents, guardian, or custodian and Blowers had the authority to take Jabreco into temporary custody pursuant to § 43-248(5). Blowers could then conduct a search of Jabreco in order to remove any weapons and in order to prevent the concealment or destruction of evidence. Thus, based on § 43-248(5) and *In re Interest of Adrian B., supra,* we conclude that the search of Jabreco was constitutionally permissible.

In summary, we conclude that the search and seizure of Jabreco by Blowers did not violate Jabreco's constitutional rights. Therefore, the juvenile court did not err in overruling Jabreco's motions to suppress.

Jabreco next assigns that the juvenile court erred in determining that it had juridiction to enter a dispositional order while an appeal from the adjudication order is pending. The Nebraska Supreme Court recently addressed this very issue in *In re Interest of Jedidiah P.,* 267 Neb. 258, 673 N.W.2d 553 (2004). Therein, a separate juvenile court adjudicated a child to be a juvenile meeting the definition of § 43-247(1) because he had allegedly received stolen property, and that court continued disposition until a report could be prepared by a juvenile probation office. The child appealed the adjudication, and after the notice of appeal was filed, the separate juvenile court conducted what it described as a " 'dispositional hearing.' " 267 Neb. at 262, 673 N.W.2d at 556. At the time of the dispositional hearing, the child had been residing at a juvenile detention center for 3 months. It was determined that the appropriate level of care for the child was that of a residential treatment center, and all involved agreed that it was not in the child's best interests to

remain at the juvenile detention center. There was a waiting period for placement at the residential treatment center, and the guardian ad litem opposed returning the child to his parents' home. Thus, the separate juvenile court concluded that the child's best interests required that his temporary custody be transferred to the Department of Health and Human Services, Office of Juvenile Services, for placement in a residential treatment center. On appeal to this court, we concluded that the separate juvenile court had jurisdiction to enter the dispositional order. See *In re Interest of Jedidiah P.*, Nos. A-02-429, A-02-695, 2003 WL 21647681 (Neb. App. July 15, 2003) (not designated for permanent publication). The Nebraska Supreme Court granted further review and affirmed the decision of the Court of Appeals. The Supreme Court held that pursuant to Neb. Rev. Stat. § 43-2,106 (Reissue 1998), county courts sitting as juvenile courts, as well as separate juvenile courts, continue to exercise supervision of a juvenile during an appeal until the appellate court enters an order making other disposition. It also determined that pursuant to Neb. Rev. Stat. § 43-295 (Reissue 1998), a separate juvenile court retains jurisdiction to order a temporary change in custody if it is in the child's best interests. The Supreme Court further held that the exercise of this jurisdiction pursuant to §§ 43-2,106 and 43-295 is not without limits and that the extent of the court's jurisdiction must be determined by the facts of each case. The Supreme Court specifically held:

[P]ending an appeal from an adjudication, the juvenile court does not have the power to enter a permanent dispositional order. [Citation omitted.] Any order regarding the disposition of a juvenile pending the resolution of an appeal of the adjudication can only be made on a temporary basis upon a finding by the court that such disposition would be in the best interests of the juvenile.

*In re Interest of Jedidiah P.*, 267 Neb. at 264, 673 N.W.2d at 557.

In the present case, the dispositional hearing was held after Jabreco filed his notice of appeal from the adjudication order. At the dispositional hearing, Jabreco challenged the juvenile court's authority to go forward with disposition. The juvenile court stated that it was proceeding with disposition, and it

ordered that Jabreco be placed on probation for 1 year, with a 6-month review. It is clear that the order of probation is not an order of a change in custody pursuant to § 43-295. We further conclude that the dispositional order was not made "on a temporary basis upon a finding by the court that such disposition would be in the best interests of the juvenile," *In re Interest of Jedidiah P.*, 267 Neb. 258, 264, 673 N.W.2d 553, 557 (2004). It is apparent that the juvenile court intended its order of probation to be a permanent dispositional order. In addition, the juvenile court made no finding that the dispositional order was in Jabreco's best interests. Thus, we conclude that the juvenile court exceeded its authority when it entered the dispositional order of probation while an appeal from the adjudication was pending. We therefore vacate the order of disposition.

## CONCLUSION

Having determined that Jabreco's motions to suppress were properly overruled, we affirm the decision of the juvenile court in case No. A-03-950 adjudicating Jabreco as a juvenile as defined by § 43-247(1). Having further determined that the juvenile court did not have jurisdiction to enter the dispositional order in case No. A-03-1171, we vacate such order and remand the cause for further proceedings.

JUDGMENT IN NO. A-03-950 AFFIRMED.

JUDGMENT IN NO. A-03-1171 VACATED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.