Bentley Kassal, J.
ISSUE
Two issues are presented by this motion to suppress statements made by the defendant:
(1) Whether the police had received notice that the defendant was represented by an attorney prior to the questioning that resulted in inculpatory statements.[1]
(2) Whether the defendant, who at first declined to give a statement, was adequately and effectively apprised of his Miranda rights (Miranda v Arizona, 384 US 436) and knowingly and intelligently waived them in making the statement more than four hours later.
1. NOTICE OF LEGAL REPRESENTATION
At the Huntley hearing (People v Huntley, 15 NY2d 72), the only evidence presented with respect to the time the statements were made was the testimony of Detective Gerald Connolly, confirmed by notations in his memo book. This *931 evidence, which I find to be credible, confirms that the oral statement was made at about 2:40 p.m. on October 1, 1974 and a written statement was taken between approximately 3:10 p.m. and 3:40 p.m. on the same date.
The defendant’s only witness at the hearing, Kenneth W. Salaway, Esq., an attorney associated with defendant’s counsel, testified that he received a telephone call between approximately 2:45 p.m. and 3:00 p.m. on the day in question and that between 2:45 p.m. and 3:00 p.m., he called the precinct where the defendant was being held. He had no memorandum or notes as to the specific times, but did relate the times to other events that day, more than two years before this hearing.
Finally, the prosecution presented a civilian employee, Police Administrative Aide Stanley Radomski, with no independent recollection, who did produce a telephone log book which he had the duty to maintain. The log noted that at 15:40 hours (3:40 p.m.), he received a telephone call at the precinct from Mr. Salaway. (Detective Connolly had stated he first received such information from Mr. Radomski after he finished taking the defendant’s statement, at about 3:40 p.m.)
I credit the evidence presented by Mr. Radomski, under a duty to accurately and contemporaneously record such telephone calls, and who has no apparent reason to falsify.
Therefore, on the basis of the credible evidence presented by Detective Connolly, confirmed by the testimony of Mr. Radomski, I find that the police did not have notice of the legal representation of defendant prior to either statement. Therefore, this branch of the motion is denied in all respects.
2. WAIVER OF MIRANDA RIGHTS
A. Finding of Facts
We now confront far more difficult problems. The only evidence offered on this issue is the testimony of Detective Connolly, the pertinent parts of which are summarized in this timetable:
7:20 a.m. — Detective Connolly went to the Sanchez residence and left word to have the defendant call him.
9:30 a.m. — Defendant called Detective Connolly and agreed to go to his office to speak with him although he was not given any reason.
10:20 a.m. — Defendant arrived at the homicide zone 1 office *932 and, after giving pedigree information, was advised the police were investigating the death of Luis Arce. The defendant was given Miranda warnings and when asked if he wanted to make a statement, he replied, "No, he would not.” No further interrogation took place at that time, but defendant did consent to have his photograph taken. The defendant was placed in the "coffee room” and left alone, but not free to leave.
1:50 p.m. — Detective Connolly returned and at defendant’s request, he attempted to call the defendant’s brother, but was unable to do so. There was no interrogation.
2:30 p.m. — Detective Connolly formally arrested the defendant for homicide. At the hearing, on direct examination, he did not recall if he readministered the Miranda warnings at that time, but on cross-examination admitted that he had not.
2:35 p.m. — The defendant’s brother called back and Detective Connolly told him the defendant was under arrest and permitted them to speak. While Detective Connolly stood near the door of the coffee room, the defendant conversed in Spanish with his brother on the telephone for about five minutes. In spite of the fact that Detective Connolly did not understand Spanish and only recognized two street names, he told the defendant after the call:
"I know what you said. I guess you don’t think that I understand Spanish.
"Do you want to [tell] me about it now?”
The defendant said "okay” and confessed to the homicide.
3:10 p.m.-3:40 p.m. — After the defendant had completed his oral statement, Detective Connolly took a formal question and answer statement from the defendant in longhand which the defendant signed. Detective Connolly did not recall whether he advised the defendant of his Miranda rights before the formal written statement.
With respect to the defendant himself, the only evidence is that he was 17 years old and spoke both Spanish and English to some degree. No evidence as to his prior experience with the criminal justice system was offered, and due to his age, such data would not appear in the record presented to the court.
I find the above evidence to be credible and it shall constitute the findings of fact with respect to this issue.
*933 B. THE LAW
I. Miranda
While the general principles enunciated in Miranda v Arizona (384 US 436, 467, 469, 473-476) are well known, some of the specific language of that decision merits review:
"In order to combat these pressures [to undermine an individual’s will to resist] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored. * * *
"It is only through an awareness of these consequences [that his statements will be used against him] that there can be any assurance of real understanding and intelligent exercise of the privilege * * *
"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. [Footnote omitted.] At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise * * *
"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel * * * "Moreover, any evidence that the accused was threatened, tricked or cajoled into a waiver will, of course, show that the defendant did not validly waive his privilege.” (Emphasis added.)
II. Post Miranda
Many decisions since Miranda have further interpreted the absolute language employed in that decision and, arguably, have led to "distortion” and "erosion” of the basic constitutional principles cited therein. (See, e.g., Michigan v Mosley, 423 US 96,112 [Brennan and Marshall, JJ., dissenting].)
The above language, that interrogation must cease once a person in custody has indicated a desire to remain silent, no longer creates a per se proscription against all further ques *934 tioning. So long as the person’s right to cut off questioning has been "scrupulously honored” in the first instance, he may be asked to reconsider at a later time. (Michigan v Mosley, supra, pp 102-106; Hill v Whealon, 490 F2d 629; United States v Collins, 462 F2d 792, 802, cert den 409 US 988; People v Gary, 31 NY2d 68.) Several decisions have validated the procedure whereby a defendant, after a break in the questioning, is asked to reconsider his decision to remain silent in a noncoercive manner and where he is readvised of his Miranda rights before a statement is taken. (See, e.g., cases cited in n 9, Michigan v Mosley, supra, p 103; People v Gary, supra.)
Further, where a defendant has once waived his rights and a statement is taken, it has been held that there is no need to repeat the warnings before a subsequent interrogation. (People v Johnson, 49 AD2d 663; People v Caruso, 45 AD2d 804; People v Manley, 40 AD2d 907; United States v Phelps, 443 F2d 246.) Under the facts of those cases, however, the court found that it was unreasonable or even incredible to assume that the defendant had forgotten or no longer understood the warning.
I have found no case where a subsequent interrogation has been upheld without "fresh” warnings when the accused initially chose to remain silent. (But see Keiper v Cupp, 509 F2d 238, which held that a defendant did not meet his burden on an appeal of the dismissal of his habeas corpus petition, where he was not rewarned on one interrogation but had been rewarned six times.)
Several points, while not, in themselves, dispositive, are also worthy of consideration:
1. If the defendant, in a'ddition to declining to make a statement, had asked for counsel, the subsequent statement would probably have been inadmissible. In suppressing such a statement the court in United States v Clark (499 F2d 802, 807) found: "At the very least, the agents should have afforded [the defendant] sufficient time to employ and consult with counsel before they initiated any subsequent interview.” The period in question in that case was almost exactly the same as involved herein. (See, also, United States v Slaughter, 366 F2d 833, 840-841; Michigan v Mosley, supra, p 101; Miranda v Arizona, 384 US 436, 474, supra.)
As the standard procedure has evolved in New York, however, the accused is asked only whether he understands each of the four warnings prescribed by Miranda and if all replies *935 are affirmative, he is asked if he desires to make a statement. If the answer is "no” (as herein) the conversation properly ceases. Thus, although the accused may understand that he has a right to counsel, the procedure leaves little room or encouragement for him to request or obtain counsel immediately.
As recently noted by the Court of Appeals in People v Hobson (39 NY2d 479, 485, supra), "These warnings often provide only a feeble opportunity to obtain a lawyer, because the suspect or accused is required to determine his need, unadvised by anyone who has his interests at heart.”
While this procedure does not per se constitute error requiring suppression of the statement (cf. Michigan v Tucker, 417 US 433, 446-448; People v Tutt, 38 NY2d 1011, 1013-1014 [Gabrielli, J., concurring]), it is a circumstance to be considered. (See, generally, Schneckloth v Bustamonte, 412 US 218, 226.)
2. As indicated on the first branch of this motion, the statements herein would have been inadmissible if the defendant’s attorney had reached the police about one hour sooner.
3. With respect to the claimed "trick” employed by Detective Connolly (see above "timetable” at 2:35 p.m.), the practice commentary to CPL 60.45 (Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 60.45, p 261) states, "the consistent New York rule has been that deception alone does not render a statement involuntary and inadmissible”. All of the cases cited in support of this statement, however, applied ^re-Miranda law, and I have found no recent cases which have clearly confronted the strong language of Miranda quoted previously. In fact, the very concept of trickery would appear antithetical to an understanding and intelligent waiver of one’s rights although it might be a factual question of degree. (But see Michigan v Mosley, 423 US 96, 98-99, supra, where the court noted that the defense of trickery had been raised in the trial court, but did not address this in its ruling.)
CONCLUSION
In determining a motion, such as this, the court must examine and assess the totality of the circumstances surrounding the statement, the details of the interrogation and the characteristics of the defendant. (Schneckloth v Busta *936 monte, supra; Gallegos v Colorado, 370 US 49.) Beyond testing the voluntariness and reliability of the statement, the court must determine whether the substance and spirit of the prophylactic procedure announced in Miranda have been observed, for, unless proper procedures are followed, the statement is inadmissible even if wholly voluntary. (Michigan v Mosley, 423 US 96, 100, supra; Michigan v Tucker, supra, p 443.) "[T]he critical inquiry is whether the prosecution has sustained its heavy burden of establishing that [the defendant] was fully informed of and understood his rights and whether, having once expressed his decision to exercise them, he later changed his mind and knowingly and understandingly declined to exercise them”. (United States v Cavallino, 498 F2d 1200, 1202; citations omitted.)
Under the totality of circumstances as recounted herein, it cannot be said with any certainty that the defendant was fully aware of his rights and voluntarily, knowingly and understandingly chose to waive them. In reaching this conclusion, it is unnecessary to decide, as the Court of Appeals for the Second Circuit did, in banc (United States v Collins, 462 F2d 792, 802), "that what Miranda requires is that 'interrogation must cease’ until new and adequate warnings have been given and there is a reasonable basis for inferring that the suspect has voluntarily changed his mind.”[2]
Here, much intervened between the warnings and the statements. This included the passage of more than four hours — a substantial period of time; the formal arrest of defendant for homicide but a few minutes before the culpable statement, without a fresh set of warnings; the short period of time after the completion of the one telephone call; and the request to reconsider, which was couched in an informal and deceptive manner. The totality of these circumstances combined to place the accused in a different posture with respect to inculpability and, probably, in a very different mental state so that it cannot be said with any certainty that he was then aware of his rights or that the original warnings, at such later date, remained alive, adequate and effective.
For the reasons set forth above, the People have failed to meet their burden of proof beyond a reasonable doubt and the *937 motion is therefore granted. (People v Huntley, 15 NY2d 72, 78.)
The court is aware of the Supreme Court decision in the case of Oregon v Mathiason (429 US 492) as it was reported in today’s New York Times. That case, pertaining to a suspect who was not under arrest or in "custody” appears to be clearly distinguishable from the instant case.

. As recently reaffirmed by the Court of Appeals in People v Hobson (39 NY2d 479, 481): “Once a lawyer has entered a criminal proceeding representing a defendant * ** * the defendant in custody may not waive his right to counsel in the absence of the lawyer (People v Arthur, 22 NY2d 328, 329). Any statements elicited by an agent of the State, however subtly, after a purported 'waiver’ obtained without the presence or assistance of counsel, are inadmissible.”

. It should be noted that this statement was dicta since the conviction in that case was affirmed by the Second Circuit and certiorari has been denied by the Supreme Court.