In re Interest of Miah S., a child
under 18 years of age.
State of Nebraska, appellee,
v. Miah S., appellant.
___ N.W.2d ___

Filed April 3, 2015.   No. S-14-632.

1. **Motions to Suppress: Confessions: Constitutional Law: Miranda Rights: Appeal and Error.** In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, including claims that it was procured in violation of the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. With regard to historical facts, the appellate court reviews the trial court's findings for clear error. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which the appellate court reviews independently of the trial court's determination.

2. **Miranda Rights.** *Miranda* warnings, once given, are not to be accorded unlimited efficacy or perpetuity.

3. **Miranda Rights: Constitutional Law: Time.** A suspect need not be advised of his or her constitutional rights more than once unless the time of warning and the time of subsequent interrogation are too remote in time from one another.

4. **Miranda Rights: Waiver.** Courts must consider the totality of the circumstances with respect to a suspect's waiver of his or her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

5. ____: ____. An initial *Miranda* warning and waiver continue to be valid, unless the circumstances change so seriously that the suspect's answers no longer are voluntary, or unless the suspect no longer is making a knowing and intelligent relinquishment or abandonment of rights.

6. **Miranda Rights: Waiver: Constitutional Law.** With respect to a juvenile's waiver of his or her *Miranda* rights, a totality of the circumstances analysis mandates inquiry into all the circumstances surrounding the interrogation, including an evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he or she has the capacity to understand the warnings given to him or her, the nature of his or her Fifth Amendment rights, and the consequences of waiving those rights.

7. **Miranda Rights: Waiver.** A valid *Miranda* waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

8. **Miranda Rights: Waiver: Time.** In the determination whether a *Miranda* waiver was valid, the amount of time elapsed between the warning and the subsequent interrogation is not the only factor to be considered, but is a very relevant one.

9. **Miranda Rights.** The fact that a suspect indicates he or she still recalls his or her rights is a factor that tends to prove the initial *Miranda* warning is still effective.

10. ____. The purpose of the warnings in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), were in part to guard against the inherently compelling pressures of the custodial interrogation.

Appeal from the Separate Juvenile Court of Douglas County: Christopher Kelly, Judge. Affirmed.

Joseph Kuehl for appellant.

Donald W. Kleine, Douglas County Attorney, and Cortney Wiresinger for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.
## NATURE OF CASE
Miah S., the juvenile defendant, was arrested for burglary. Miah initially waived his *Miranda* rights[1] and agreed to speak to a detective. The next day, two different detectives went to Miah's home to interview him about additional burglaries in the area. The detectives did not readvise Miah of his rights, but did notify him that the warnings from the day before were still in effect. Miah then admitted to being involved in other burglaries and was eventually charged with seven additional counts of burglary.

At trial, Miah filed a motion to suppress the statements made during the second encounter with law enforcement, claiming they were obtained in violation of *Miranda*. The trial court overruled the motion and subsequently adjudicated Miah as being a minor within Neb. Rev. Stat. § 43-247(2) (Supp. 2013).

We find the juvenile court did not err in overruling the motion to suppress and affirm the adjudication.

---

[1] See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

## BACKGROUND

Miah was arrested on November 18, 2013, along with four other individuals after they were caught while allegedly burglarizing a home. At the time of the arrest, Miah was 14 years old and had no prior criminal history. The five individuals were transported to central police headquarters in Omaha, Nebraska, and were interviewed by detectives. Miah and another suspect were interviewed by Det. Rosemary Henn. Det. Shawn Loontjer interviewed two of the other suspects, and Det. Chris Perchal interviewed the fifth suspect.

Prior to questioning, Henn advised Miah of his rights under *Miranda* by reading the standard Omaha Police Department rights advisory form. Henn testified that Miah appeared to understand his rights and that Miah stated he wished to speak to her at that time. The interview lasted 45 minutes to an hour, and at the end of the interview, Miah was booked for the burglary. Miah was released to his home and placed on an electronic monitoring program.

During their interrogations, two of the other suspects admitted to participating in multiple burglaries. On the next day, November 19, 2013, Loontjer and Perchal went to Miah's home to follow up on Miah's possible participation in the other burglaries. The record is silent as to exactly how much time passed between the two interviews, but at oral argument, counsel for Miah indicated that less than 24 hours had passed.

Miah's mother answered the door, and Loontjer asked if they could speak with Miah. Loontjer testified that Miah came into the living room, "plopped down on the couch," and appeared "very aloof." Loontjer sat approximately 2 feet away from Miah on the couch, and Perchal stood in between the couch and the front door. Miah's mother was present for almost the entire interview, and Loontjer described her as "an active participant in the conversation." Loontjer conducted the interview. Perchal's primary role was to take notes.

Both detectives testified that Loontjer first confirmed with Miah that he had been advised of his *Miranda* rights by Henn. Loontjer then advised Miah that those rights were still in

effect. According to the detectives, Miah told Loontjer that "he was aware of [his rights] and did not need [the detectives] to go over them again." Miah admitted to the detectives that he had participated in other break-ins and agreed to go along with the detectives to point out where the break-ins occurred. The detectives believed Miah's mother gave consent for Miah to go with the detectives. The detectives both testified that they asked if Miah's mother wished to accompany them, but that she said she had to stay at the home to look after a child in the house.

Miah accompanied the detectives in the detectives' car and pointed out seven different locations of recent burglaries. Each time, Miah told the detectives how entry was gained into the residence, who participated, and what they took. For all seven residences, Miah's statements were corroborated by police reports that were filed at the time of the burglaries. Miah was then taken home. Both officers denied they had offered to be lenient if Miah cooperated, threatened Miah with jail time if he did not speak to them, or promised to talk to prosecutors on Miah's behalf if he cooperated. Miah was subsequently charged with seven additional counts of burglary.

At trial, Miah's mother gave a different account of what occurred during the encounter on November 19, 2013. She testified that the issue of *Miranda* was never brought up during the interview. Miah's mother described Miah as "[s]cared, nervous," during the encounter with the detectives and stated that Miah was "fidgety" and did not make eye contact with the detectives. She also alleged that the detectives made several threats to Miah about what would happen if he did not cooperate, and also that the detectives offered to be lenient if Miah would help them. Miah's mother testified that the detectives did not ever invite her to accompany Miah, but that she also never asked if she could go along.

There is very little in the record to indicate Miah's level of intelligence or comprehension ability. According to Miah's mother, Miah was in the ninth grade at the time of trial and was receiving poor grades. Miah's mother attributed Miah's poor grades to his lack of attendance at school. Miah has never been diagnosed with any learning disability. Miah also

had minimal, if any, experience with law enforcement prior to his arrest.

At trial, Miah filed a motion to suppress Miah's statements to law enforcement on November 19, 2013, claiming they were obtained in violation of *Miranda*. A hearing was held, and the juvenile court subsequently entered an order overruling Miah's motion to suppress. First, the juvenile court "assign[ed] particular credibility to the testimony of . . . Loontjer and Perchal where said testimony is in conflict with that of the child's mother." The juvenile court held that

> [w]hile the better practice would be to re-advise any suspect, particularly a child, of his or her Miranda Rights in a situation where a child is being re-interviewed by police, the Court finds that this is not a requirement, including where a suspect (including a child suspect) is reminded that the rights previously described to him/ her continue to apply, and the suspect or child indicates understanding.

The juvenile court went on to determine that Miah's "statements were freely, knowingly and voluntarily given under the protocol of having been previously advised of his constitutional rights, per Miranda." The juvenile court also assumed the interaction between Miah and the detectives was a custodial interrogation, without ever explicitly addressing the issue in the order or explaining what facts the juvenile court used to reach that conclusion. By not specifically addressing that issue, the State, in its brief, also appears to assume that the interaction was a custodial interrogation.

Miah appealed from the judgment of the juvenile court. In his brief, Miah notes that the motion to suppress affected only counts 2 through 8. Those charges stemmed from the statements made on November 19, 2013, which Miah now seeks to exclude. Consequently, count 1, which charged Miah with the November 18 burglary, was not impacted by the motion to suppress.

## ASSIGNMENT OF ERROR

Miah assigns that the juvenile court erred in determining that he made a knowing, voluntary, and intelligent waiver of

his right to counsel and his privilege against self-incrimination during the November 19, 2013, interrogation.

## STANDARD OF REVIEW

[1] In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, including claims that it was procured in violation of the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*,[2] an appellate court applies a two-part standard of review. With regard to historical facts, we review the trial court's findings for clear error. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which we review independently of the trial court's determination.[3]

## ANALYSIS

Miah does not challenge the validity of the initial waiver of his rights under *Miranda* or the statements he made to law enforcement on November 18, 2013; therefore, we assume that Miah's initial waiver was valid. Nor does Miah challenge that the juvenile court clearly erred in its findings of fact; therefore, we must accept the facts as determined by the juvenile court. By the same token, the State does not challenge the custodial nature of the interrogation. Therefore, the sole issue before us is whether the *Miranda* warnings given the previous day were still fresh such that Miah could voluntarily and knowingly waive his rights.

[2,3] Miah assigns that the juvenile court erred in determining the *Miranda* warnings given on November 18, 2013, still applied while Miah was being interrogated by the detectives the next day. It is clear that "*Miranda* warnings, once given, are not to be accorded unlimited efficacy or perpetuity."[4] But at the same time, a suspect "need not be advised of his constitutional rights more than once unless the time of warning and the time of subsequent interrogation are too remote in time

---

[2] *Id.*

[3] *State v. Juranek*, 287 Neb. 846, 844 N.W.2d 791 (2014).

[4] *United States v. Hopkins*, 433 F.2d 1041, 1045 (5th Cir. 1970).

from one another."[5] This is, however, the first occasion this court has had to address the issue of under what circumstances a readvisement would be necessary.

[4] There is no fixed time limit as to how much time must pass before the warnings are ineffective, because courts must consider the totality of the circumstances with respect to a suspect's waiver of his or her rights under *Miranda*.[6] The U.S. Supreme Court confirmed this approach in *Wyrick v. Fields*.[7] In that case, the defendant was arrested on a rape charge and requested a polygraph examination. Prior to the polygraph examination, the defendant had waived his rights to have his attorney present and to remain silent. At the conclusion of the test, the examiner informed the defendant that the test revealed that the defendant had been deceitful. The examiner asked if the defendant wished to explain the results. The defendant then admitted to having sexual contact with the victim, but claimed it was consensual. The defendant sought to suppress these statements, but the trial court denied the motion and the defendant was subsequently convicted. The Eighth Circuit overturned his conviction and, citing *Edwards v. Arizona*,[8] held that although the defendant waived his right to have counsel present during the polygraph examination, the defendant had not waived that right during the post-test interrogation.

[5] The U.S. Supreme Court reversed the Eighth Circuit's decision, because the circuit court "did not examine the 'totality of the circumstances,' as *Edwards* requires."[9] There was nothing to suggest that the completion of the test and the defendant's being asked to explain the results were

_____

[5] *State v. Davis*, 261 Iowa 1351, 1354, 157 N.W.2d 907, 909 (1968).

[6] See *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009). See, also, *Upton v. State*, 257 Ark. 424, 516 S.W.2d 904 (1974); *Miller v. State*, 337 So. 2d 1360 (Ala. Crim. App. 1976).

[7] *Wyrick v. Fields*, 459 U.S. 42, 103 S. Ct. 394, 74 L. Ed. 2d 214 (1982).

[8] *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981).

[9] *Wyrick, supra* note 7, 459 U.S. at 47.

significant enough occurrences to cause the defendant to immediately forget his rights under *Miranda* or render his statements involuntary. The Court held that the initial warning and waiver would still be valid, "unless the circumstances changed so seriously that [the suspect's] answers no longer were voluntary, or unless [the suspect] no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights."[10]

Because the analysis involves an examination of the totality of the circumstances, the amount of time that elapsed between the warning and subsequent interrogation is not the sole dispositive factor in determining whether there has been a violation of *Miranda*. We note the lack of consistency across different jurisdictions in addressing this issue. For example, some courts have required a readvisement of *Miranda* rights after 4 hours,[11] 18 hours,[12] 2 days,[13] and 3 days.[14] While at the same time, other courts have held that a readvisement was not necessary after 5 hours,[15] 17 hours,[16] 2 days,[17] 3 days,[18] and all the way up to a week or more if law enforcement asks if the suspect remembers his or her rights.[19]

The analysis is dependent upon the facts of a particular situation. We find it useful, as other courts have also done, to enumerate the circumstances often relevant to the decision

---

[10] *Id.*

[11] *People v. Sanchez*, 88 Misc. 2d 929, 391 N.Y.S.2d 513 (N.Y. Sup. 1977).

[12] *U.S. v. Jones*, 147 F. Supp. 2d 752 (E.D. Mich. 2001).

[13] *Franklin v. State*, 6 Md. App. 572, 252 A.2d 487 (1969).

[14] *People v. Quirk*, 129 Cal. App. 3d 618, 181 Cal. Rptr. 301 (1982).

[15] *Stumes v. Solem*, 752 F.2d 317 (8th Cir. 1985).

[16] *State v. Myers*, 345 A.2d 500 (Me. 1975).

[17] *Babcock v. State*, 473 S.W.2d 941 (Tex. Crim. App. 1971).

[18] *Maguire v. United States*, 396 F.2d 327 (9th Cir. 1968); *Johnson v. State*, 56 Ala. App. 583, 324 So. 2d 298 (1975).

[19] *Martin v. Wainwright*, 770 F.2d 918 (11th Cir. 1985), *modified on denial of rehearing* 781 F.2d 185 (11th Cir. 1986); *Biddy v. Diamond*, 516 F.2d 118 (5th Cir. 1975).

of whether a *Miranda* warning has gone stale. The factors adopted by the North Carolina Supreme Court seem particularly useful:

> (1) the length of time between the giving of the first warnings and the subsequent interrogation. . . ; (2) whether the warnings and the subsequent interrogation were given in the same or different places . . . ; (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers . . . ; (4) the extent to which the subsequent statement differed from any previous statements . . . ; (5) the apparent intellectual and emotional state of the suspect.[20]

Other jurisdictions have applied similar factors in the case of juvenile suspects.[21] These factors are simply meant to provide guidance; a court's analysis need not be limited only to these factors. As discussed earlier and as *Wyrick*[22] makes clear, we are to consider the *totality* of the circumstances.

[6] For example, in the case at bar, the suspect's age and relative inexperience with law enforcement are particularly relevant considerations. Indeed, the U.S. Supreme Court has held that the totality of the circumstances analysis "mandates . . . inquiry into all the circumstances surrounding the interrogation," including an "evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights."[23] This court has previously applied the totality of the circumstances approach in the case of a 14-year-old's waiver of his *Miranda* rights, adding that

---

[20] *State v. McZorn*, 288 N.C. 417, 434, 219 S.E.2d 201, 212 (1975), *judgment vacated in part* 428 U.S. 904, 96 S. Ct. 3210, 49 L. Ed. 2d 1210 (1976). See, also, *State v. DeWeese*, 213 W. Va. 339, 582 S.E.2d 786 (2003).

[21] See *In re Kevin K.*, 299 Conn. 107, 7 A.3d 898 (2010).

[22] *Wyrick, supra* note 7.

[23] *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed. 2d 197 (1979).

we must "necessarily exercise[] 'special caution' with respect to juveniles."[24]

[7] A valid *Miranda* waiver must be "made with a full awareness [of] both . . . the nature of the right being abandoned and the consequences of the decision to abandon it."[25] We acknowledge the growing body of research suggesting that many of those in Miah's age group may not be able to adequately comprehend the warnings and provide a meaningful waiver of those rights.[26] In most cases, however, the age of a suspect is not enough on its own to render a waiver invalid under the totality of the circumstances test. We must consider Miah's actual intellectual capabilities and experience and weigh that against the other circumstances of the case.

The record in this case is left wanting with regard to Miah's intelligence level or exactly what he understood he was waiving. We are aware that Miah had no previous experience with law enforcement. Miah's mother also testified that Miah had poor grades in school, but explained that it was "because he skipped a lot [of classes] in the first quarter." But Miah has also never been diagnosed with any type of learning disability. Miah's age, level of education, and lack of experience must factor into our analysis, but the circumstances of this case are not such that Miah's age, intelligence, and experience would overwhelmingly outweigh all other factors.

[8] As previously discussed, although the amount of time that elapsed between the warning and the subsequent interrogation is not the only factor to be considered, it is certainly a very relevant one. The record is also silent on precisely how much time passed between the first and second interrogations. Miah's attorney stated at oral argument that the attorney believed the time lapse to be less than 24 hours. Even assuming 24 hours elapsed, or even slightly longer, it appears that that length of time is not clearly excessive across many

---

[24] *Goodwin, supra* note 6, 278 Neb. at 958, 774 N.W.2d at 744 (quoting *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)).

[25] *Goodwin, supra* note 6, 278 Neb. at 956, 774 N.W.2d at 743.

[26] See, e.g., Barry C. Feld, *Police Interrogation of Juveniles: An Empirical Study of Policy and Practice*, 97 J. Crim. L. & Criminology 219 (2006).

jurisdictions. Several courts have found warnings to still be effective after longer time lapses.[27] Of course, in some situations, other factors may still render *Miranda* warnings stale after a 1-day lapse.

[9] Perhaps one of the most critical factors to this case is that during the second interrogation, the detective asked Miah if he had been given the warnings the day before, asked if Miah still recalled the warnings, and also offered to repeat the warnings if Miah wished. We cannot overlook the fact that Miah indicated he understood his rights and did not request the detectives to repeat them. Numerous courts have cited the fact that the suspect indicated he or she still recalls his or her rights as a factor that tends to prove the initial *Miranda* warning was still effective.[28] The fact that a suspect indicates he or she remembers the *Miranda* warnings and understands that the warnings still apply is a strong factor in favor of finding that the *Miranda* warnings were still fresh.

[10] Other factors in this case also suggest that the *Miranda* warnings were still fresh. We note that the second interrogation occurred in a much less intimidating environment than the initial interrogation. The purpose of the warnings in *Miranda* were in part to guard against the "inherently compelling pressures" of the custodial interrogation.[29] In particular, the Court also recognized the extent to which being in a police station adds to that compulsion.[30]

In the present case, the first interrogation and initial waiver occurred at the police station without another adult present. By contrast, the second interrogation occurred in Miah's living room with his mother present. Additionally, even though different detectives questioned Miah the second time, the detectives were from the same department and questioned Miah about burglaries related to the one for which he had already

---

[27] See cases cited *supra* notes 16-18.

[28] See, *U.S. v. Nguyen*, 608 F.3d 368 (8th Cir. 2010); *State v. Dixon*, 107 Ariz. 415, 489 P.2d 225 (1971); *State v. Smith*, 90 So. 3d 1114 (La. App. 2012).

[29] *Miranda, supra* note 1, 384 U.S. at 467.

[30] *Miranda, supra* note 1.

been booked the day before. There is less risk of confusion in this type of situation than there would be if the suspect was being questioned by officials from a different agency or about completely different crimes.

As explained above, with respect to a juvenile's waiver of his or her *Miranda* rights, we consider the totality of the circumstances.[31] Ultimately, the facts that the initial waiver occurred less than 24 hours beforehand, that the second detective checked that the warnings had been given and asked whether Miah wished for them to be repeated, that the second interrogation occurred primarily in Miah's living room with his mother present, and that Miah was questioned about crimes related to the first interrogation, lead us to the conclusion that the *Miranda* warnings were not stale.

Taking into account that "the age, education, and intelligence of an accused are included within the totality of circumstances which a court must assess in determining whether there has been a knowing and voluntary waiver,"[32] we do not believe that the "circumstances changed so seriously" between the initial warning, the effect of which Miah does not contest, and the subsequent interrogation that Miah was "no longer . . . making a 'knowing and intelligent relinquishment or abandonment' of his rights."[33] The juvenile court did not err in overruling Miah's motion to suppress.

## CONCLUSION

The adjudication of the juvenile court is affirmed.

Affirmed.

---

[31] *Goodwin, supra* note 6.

[32] *Id.* at 958, 774 N.W.2d at 744.

[33] *Wyrick, supra* note 7, 459 U.S. at 47.