IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF BRANDEN S.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF BRANDEN S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
BRANDEN S., APPELLANT.


Filed January 5, 2016.    No. A-15-245.


Appeal from the Separate Juvenile Court of Douglas County: VERNON DANIELS, Judge. Affirmed.

Mary "Peg" Stevens, of Carlson & Burnett, L.L.P., for appellant.

Donald W. Kleine, Douglas County Attorney, and Anthony M. Hernandez for appellee.


MOORE, Chief Judge, and IRWIN and INBODY, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Branden S. appeals from the order of the Separate Juvenile Court for Douglas County, which overruled his motion to suppress and adjudicated him as a juvenile within the meaning of Neb. Rev. Stat. § 43-247(2) (Reissue 2008). Because we conclude that Branden waived his *Miranda* rights and his confession was freely and voluntarily given, we affirm.

## BACKGROUND

*Juvenile Petition*.

On January 18, 2013, the State of Nebraska filed a petition in the juvenile court, alleging that Branden was within the meaning of § 43-247(2) in that he subjected K.I. to sexual penetration

- 1 -

without K.I.'s consent, constituting sexual assault in the first degree, in violation of Neb. Rev. Stat. § 28-319(1)(a) (Reissue 2008), a Class II felony.

*Motion to Suppress.*

On April 25, 2013, Branden filed a motion to suppress statement, asking the juvenile court to suppress and exclude from use against him any and all statements made and evidence gained by means of a law enforcement interrogation of him on January 17. A suppression hearing was held before the juvenile court on June 25, September 13, and September 27, 2013.

Sarah Spizzirri, a detective in the Omaha Police Department's Child Victim Sexual Assault Unit, testified about her training, experience, and methods used to interview child victims and suspects. According to Spizzirri, interviewing younger suspects requires more explanation or changes in terminology used to ensure they understand the process.

On January 17, 2013, Spizzirri was investigating allegations that K.I. was sexually assaulted at the in-home daycare she attends which is operated by Branden's mother, Lori S. After speaking with K.I. and her parents, Spizzirri identified Branden as the suspect. At the time of the investigation, K.I., born in April 2008, was 4 years old, and Branden, born in May 1999, was 13 years old. On January 17, Spizzirri and Sergeant Lance Worley made contact with Branden at his school. At that time, the officers were not in uniform, but they identified themselves as police officers and told Branden that they needed to speak with him about an incident involving K.I. When Spizzirri asked Branden to join them for an interview at the police station, she did not tell him this was something he had to do.

Spizzirri and Worley transported Branden to the police station in an unmarked vehicle. Branden was not handcuffed, and he was not interrogated about the allegations on the ride from the school to the station.

Branden testified that before leaving the school, he asked Spizzirri if he would be allowed to call his parents and she told him he could do so once they were at the police station. Branden testified that he did not ask again to call his parents at the police station and that he was not offered the opportunity to do so. Spizzirri did not recall Branden indicating he wanted to speak to his parents before leaving the school, during the trip to the station, or during the interview at the station. Spizzirri testified that Branden never indicated that he did not want to speak with her.

At the police station, Spizzirri took Branden to an interview room equipped with a camera that Spizzirri or Worley turned on once Branden was placed in the room. According to Spizzirri, if Branden had asked whether he could leave, she would have told him that he could do so at that point. Spizzirri conducted the interview with Branden while Worley observed from the equipment room and took notes. Spizzirri informed Branden of the purpose for the interview, which was to discuss what happened at the daycare with K.I.

Branden told Spizzirri he was in the eighth grade and doing well in school. He did not appear to be under the influence of any drugs. Before reading Branden his rights, she explained what she was going to be doing and that, although kids are sometimes familiar with rights statements from watching television, Branden needed to know his rights before they discussed the incident involving K.I. Spizzirri testified that she definitely took additional time to make sure Branden understood his rights, that she switched a couple words to make sure he understood, and

that she explained the word "appoint." According to Spizzirri, Branden did not ask questions about any of his rights, was cooperative, and never told her he did not understand.

Spizzirri informed Branden that she was a police officer, informed Branden of his *Miranda* rights, and reviewed and completed a standard police department rights advisory form with him. Specifically, she informed him that he had a right to remain silent, that anything he said or would say could be used against him in a court of law, that he had a right to an attorney, and that he would be appointed an attorney if he could not afford one. Branden provided affirmative responses as each of these rights were explained to him and also affirmed that he was willing to talk to Spizzirri knowing his rights.

After completing the *Miranda* advisory, Spizzirri spent about 45 minutes interviewing Branden, which Spizzirri testified was a "fairly short interview." Branden initially denied the alleged sexual assault of K.I., but during the interview, he made some admissions as to sexual contact with K.I. Spizzirri testified that she did not threaten Branden or make him any promises to obtain these admissions, that she did not lie to Branden about the evidence she had against him, and that Branden did not ask for an attorney or tell her he did not wish to speak to her during the interview. Although Branden did not request a break during the interview, Spizzirri took one and offered Branden a bathroom break or water. According to Spizzirri, Branden never indicated during the interview that he was having difficulty understanding the questions asked. According to Spizzirri, Branden was mostly calm and very cooperative during the interview but that he became more nervous when he told her what happened between him and K.I.

Both the video recording and a transcription of the interview with Branden were received into evidence by the juvenile court at the suppression hearing. These exhibits are consistent with Spizzirri's testimony.

Branden's mother, Lori S., also testified at the suppression hearing. She testified that Branden had never been in trouble with the law or at school prior to the present investigation. Lori did not become aware that Branden had been removed from school and taken to the police station for interrogation until she received a telephone call on the afternoon of January 17, 2013 after the interview with Branden had already taken place. She testified that if she had been aware that Branden had been contacted by police at school, she would have sought immediate counsel on his behalf and would have instructed him not to make any statements.

On October 29, 2013, the juvenile court entered an order overruling Branden's motion to suppress.

*Adjudication.*

An adjudication hearing was held before the juvenile court on January 16 and September 12, 2014. In addition to hearing testimony from Spizzirri, K.I.'s mother, K.I.'s therapist, and some friends of Branden's family, the court received exhibits into evidence including the video of Branden's police interview and a copy of the rights advisory form completed by Spizzirri at the time of Branden's interview.

K.M. is the mother of K.I. and another child. K.I. and her sibling attended daycare at Lori's house beginning in July 2012. Lori informed K.M.'s husband of the incident involving K.I. when he picked the children up on January 9. According to K.M., K.I. did not want to talk about the

incident that evening and acted sad and withdrawn, inconsistent with her normal behavior. K.M. talked to K.I. about the incident the following day. K.M. dropped the children off at daycare on January 10, but she called her husband and had him pick them up early that day because she was concerned about K.I.'s response to the question of whether her pants were up or down during the incident.

The following day, K.M. took K.I. to the hospital for an examination because she believed K.I. had been sexually assaulted. K.M. testified that K.I. did not require any further medical treatment after the examination. K.M. met with the police at the hospital. The week after the incident, K.I. was interviewed at Project Harmony. K.M. was subsequently advised to obtain a therapist for K.I., and K.I. attended therapy with Mary Ellen Christ-Anderson, beginning a few weeks after the Project Harmony interview.

Spizzirri also testified at the adjudication hearing. After being assigned to investigate K.I.'s allegations, Spizzirri set up the forensic interview for K.I. at Project Harmony. She met with Project Harmony staff and K.I.'s parents outside of K.I.'s presence to discuss and obtain information about the disclosure made by K.I. After speaking with K.I.'s family and reviewing police reports from the hospital, Spizzirri understood that the investigation involved a situation where K.I. had disclosed digital vaginal penetration and had alleged that Branden was the perpetrator. Spizzirri and a caseworker observed the forensic interview from a monitor in another room.

Prior to contacting Branden at his school on January 17, 2013, Spizzirri interviewed other possible witnesses and suspects based on information provided by K.I. and her parents. These interviews corroborated information about who was present at the time of the incident, as well as K.I.'s location after the incident. Spizzirri's testimony about her and Worley's contact with Branden at his school was consistent with her testimony at the suppression hearing. Her testimony about the *Miranda* advisory of Branden and explanation of his rights at the police station was also consistent with her suppression hearing testimony. During the interview, Branden initially told Spizzirri that he and K.I. were "play fighting and wrestling." He told Spizzirri that if he did touch K.I. on her private or vaginal area, it was possibly with his forearm when he flipped her over while they were wrestling.

Branden's explanation of events changed when Spizzirri shared her experience, based on interviewing both adults and juveniles, as to the reasons "why people touch other people," including "some pornography, curiosity issues," and reenacting abuse they suffered themselves. Spizzirri also explained to Branden that very young children, when interviewed, talk about incidents of sexual abuse very easily because they do not understand what happened. Branden told Spizzirri that he had some sexual curiosity after watching a movie approximately a year prior that included topless college-age girls swimming in a pool. He then told Spizzirri that while he and K.I. were play fighting and wrestling, K.I.'s pants and underwear slipped down a little bit, he thought about the movie and his curiosity, and he touched K.I.'s vaginal area with his finger. Branden said he used one finger and touched K.I. on the inside of her vaginal area for one to two seconds. Branden then stopped, he or K.I. pulled her pants up, and K.I. left the room. When Branden was questioned by Lori, he told her that he and K.I. were play fighting and wrestling but

did not tell her that he put his finger in K.I.'s vagina. The information given by Branden to Spizzirri during the interview was consistent with the information provided to her by K.I.

Christ-Anderson testified about her training and experience as a mental health counselor. She specializes in play therapy for children with attachment issues and those who have suffered sexual and physical abuse and neglect. Branden objected to Christ-Anderson's testimony about her treatment of K.I. on the basis of relevance and foundation. After hearing argument from the parties about the admissibility of any disclosures or statements K.I. made to Christ-Anderson, the juvenile court sustained the objection and held that testimony about K.I.'s statements was admissible only for "purposes of medical treatment" but not for the ultimate issue of whether the acts reflected in her statements occurred or whether Branden was the actor.

The juvenile court allowed the State to make an offer of proof, during which Christ-Anderson testified that she first met with K.M. outside of K.I.'s presence to gather a history of the presenting problem before meeting with K.I. In gathering the history in this case, Christ-Anderson understood that K.I. was referred to her after having disclosed sexual abuse by Branden to her mother. K.I. did not make any disclosures during the initial session. During a subsequent session, K.I. told Christ-Anderson that she had been in the basement with Branden, and "he had pulled her panties down and touched her cooter." In talking with K.I., Christ-Anderson was able to establish that by "cooter," K.I. meant her "private parts." After the offer of proof, the juvenile court allowed its previous ruling to stand, and Christ-Anderson was not questioned further by either party.

After the State rested, Branden renewed his motion to suppress and made an oral motion to dismiss for the State's failure to prove a prima facie case, which motions were taken under advisement by the juvenile court. Branden then presented testimony from a family friend, who was present in the home on January 9, 2013 and heard K.I.'s initial statement to Lori that Branden had touched her. He also presented testimony from one of the boys, also a family friend, who was playing a video game in the basement when the incident was alleged to have occurred. According to this witness, Branden had on an oversized play boxing glove when he was play fighting with K.I. He did not see K.I.'s pants fall down, but turned around during a break in the game and saw Branden pull them up while still wearing the boxing glove.

On February 18, 2015, the juvenile court entered an order, finding that the State proved the allegations of the petition beyond a reasonable doubt and that Branden was a child as described in § 43-247(2). The court recognized that the testimony of Spizzirri and the boy who testified on Branden's behalf was in conflict regarding the alleged sexual contact between Branden and K.I., but the court found Spizzirri's testimony more credible and probative and gave it more weight. Branden subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Branden asserts that the juvenile court erred in (1) overruling his motion to suppress the video and transcript of his interrogation by law enforcement and receiving it into evidence as a confession and (2) adjudicating him a juvenile within the meaning of § 43-247(2) when the State failed to prove the specific conduct alleged beyond a reasonable doubt.

STANDARD OF REVIEW

In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, including claims that it was procured in violation of the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. *In re Interest of Miah S.*, 290 Neb. 607, 861 N.W.2d 406 (2015). With regard to historical facts, the appellate court reviews the trial court's findings for clear error. *Id.* Whether those facts suffice to meet the constitutional standards, however, is a question of law, which the appellate court reviews independently of the trial court's determination. *Id*.

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Enyce J.*, 291 Neb. 965, 870 N.W.2d 413 (2015). When credible evidence is in conflict, an appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of Joseph S.*, 291 Neb. 953, 870 N.W.2d 141 (2015). In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's rulings. *In re Interest of Candice H.*, 284 Neb. 935, 824 N.W.2d 34 (2012).

ANALYSIS

*Motion to Suppress*.

Branden asserts that the juvenile court erred in overruling his motion to suppress the video and transcript of his interrogation by law enforcement and receiving it into evidence as a confession. The State does not contest that Branden was in custody at the time of his interview with Spizzirri at the police station, and the record clearly shows that Branden was read his *Miranda* rights at the station. Accordingly, the issues presented are whether Branden validly waived those rights and whether his confession was voluntary.

In *Miranda v. Arizona, supra*, the U.S. Supreme Court sought to protect the Fifth Amendment privilege against compelled self-incrimination from the inherently compelling pressures of custodial interrogation. *State v. Brooks*, 22 Neb. App. 435, 854 N.W.2d 816, (2014). To do so, the Court required law enforcement to give a particular set of warnings to a person in custody before interrogation: that he has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to an attorney, either retained or appointed. *Id. Miranda* rights can be waived if the suspect does so knowingly and voluntarily. *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009). A valid *Miranda* waiver must be voluntary in the sense that it was the product of a free and deliberate choice and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* In determining whether a *Miranda* waiver is knowingly and voluntarily made, a court applies a totality of the circumstances test. *Id.* Factors to be considered include the suspect's age, education, intelligence, prior contact with authorities, and conduct. *Id*.

With respect to a juvenile's waiver of his or her *Miranda* rights, a totality of the circumstances analysis mandates inquiry into all the circumstances surrounding the interrogation,

including an evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he or she has the capacity to understand the warnings given to him or her, the nature of his or her Fifth Amendment rights, and the consequences of waiving those rights. *In re Interest of Miah S.*, 290 Neb. 607, 607, 861 N.W.2d 406, 408 (2015). The Nebraska Supreme Court has stated that in most cases, the age of a suspect alone is insufficient to render a waiver invalid and that a court must consider a juvenile's actual intellectual capabilities and experience, weighed against the other circumstances of the case. See *In re Interest of Miah S.*, 290 Neb. at 616.

To be admissible, a statement or confession of an accused must have been freely and voluntarily made. *State v. Grimes*, 23 Neb. App. 304, 870 N.W.2d 162 (2015). Whether a confession or statement was voluntary depends on the totality of the circumstances. *Id.* Coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the 14th Amendment. The State has the burden to prove that a defendant's statement was voluntary and not coerced. *Id.* In making this determination, an appellate court applies a totality of the circumstances test. *Id.* Factors to consider in determining whether a defendant's statement was voluntary and not coerced include the atmosphere in which the interrogation took place, the demeanor of the interrogation, the interrogator's tactics, the details of the interrogation, the presence or absence of warnings, physical treatment, prior history with the police, age, intelligence, education, background, and any characteristic of the accused that might cause his or her will to be easily overborne. *Id.* A confession must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. *Id.*

Viewing the totality of the circumstances in this case, we conclude that Branden voluntarily waived his *Miranda* rights and his confession was freely and voluntarily made. He was 13 years old at the time of his interview with Spizzirri, was doing well in school, and had not previously been in trouble at school or with law enforcement. There was no evidence that he was under the influence of any drugs. Spizzirri and Worley contacted Branden at his school and identified themselves as police officers. They told Branden they wanted to talk to him about an incident involving K.I., and he agreed to accompany them to the police station. At the police station, Branden was placed in an interview room and a video camera was activated. The video shows that Branden ate something while waiting for the interview to start. When Spizzirri entered the room for the interview, she noted that the temperature in the room was quite warm and told him he could take off his sweatshirt. Branden did so and the video shows that he was wearing a short-sleeved shirt underneath. Spizzirri offered Branden a restroom break at the beginning of the interview and offered a break again later during the interview. Branden declined both opportunities for a break, but he did accept Spizzirri's offer of some water when she took a break herself during the interview.

When Spizzirri started the interview, she again identified herself as a police officer and told Branden she wanted to talk to him about the incident with K.I. Because of Branden's age she took extra time to explain his rights to him. Spizzirri explained each of Branden's *Miranda* rights, specifically telling him that he did not have to talk to her, that anything he said could be used against him in court, that he had a right to an attorney, and that he would be appointed an attorney if he could not afford one. Branden affirmatively acknowledged that he understood each of these

rights and agreed to speak to Spizzirri. The video supports Spizzirri's testimony that Branden was mostly calm and cooperative during the interview, becoming more nervous when he told her what happened with K.I. Branden never told Spizzirri that he did not understand her questions or statements during the course of the interview. The interview lasted approximately 45 minutes.

We have reviewed the video and see nothing to show that tactics of coercion or offers of leniency were used by Spizzirri during the interview. Branden references the tone of his voice during the course of the interview, arguing that some of his responses sound like questions as if he were asking Spizzirri whether his answers were correct or acceptable. Spizzirri did not tell Branden how to answer her questions. She asked some questions which elicited affirmative or negative responses from Branden, both verbal and nonverbal, but she also gave him the opportunity to tell what happened in his own words. We see no indications of coercive tactics that would have rendered Branden's statement involuntary.

Branden relies on *In re Interest of C.H.*, 277 Neb. 565, 763 N.W.2d 708 (2009) for its factual similarities to the present case, but his reliance is misplaced as the issue determined on appeal was different than what is at issue here. In that case, the juvenile argued that his statements regarding an alleged sexual assault of his sibling should have been suppressed because they were made during a custodial interrogation and he was not advised of his *Miranda* rights. Accordingly, the issue in *C.H.* was whether he was in custody during the interview, making use of his statements a violation of his Fifth Amendment rights. The Court concluded that the juvenile was in custody for purposes of *Miranda* protections and because he was not advised of his *Miranda* rights, the juvenile court erred in failing to suppress his confession.

In this case, Spizzirri told Branden at the police station that he did not have to talk to her and fully advised him of his *Miranda* rights. Unlike the juvenile in *In re Interest of C.H., supra*, Branden was advised of his *Miranda* rights and voluntarily chose to waive those rights and talk to Spizzirri.

Branden notes his testimony that he wanted to speak to his parents before going to the police station, and his mother's testimony that if notified he had been taken into custody, she would have immediately gotten an attorney for him and told him not to make any statements. The evidence is conflicting as to whether Branden made this request. Spizzirri did not recall Branden ever asking to speak with his parents. The video of the interview shows that Branden did not ask to speak to either his parents or an attorney during the course of the interview. Given this conflicting evidence, we give weight to the fact that the trial court heard and observed the witnesses and generally accepted the testimony of Spizzirri. Further, Branden's right against self-incrimination was personal and could not be asserted by his parents. See *Michigan v. Tucker*, 417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974) (person's right against compulsory self-incrimination is personal and can only be asserted or waived by person whose right against self-incrimination is affected). See also, *In re Interest of J.G.*, 231 Neb. 530, 437 N.W.2d 153 (1989) (single-judge opinion noting that absence of parent does not make juvenile's statement involuntary per se, but is factor to be considered in totality of circumstances).

Under the totality of the circumstances, we conclude that Branden voluntarily waived his *Miranda* rights and his confession was freely and voluntarily made. The juvenile court did not err in denying Branden's motion to suppress his statement.

*Adjudication.*

Branden asserts that the juvenile court erred in adjudicating him a juvenile within the meaning of § 43-247(2) when the State failed to prove the specific conduct alleged beyond a reasonable doubt. Under § 43-247(2), the juvenile court has jurisdiction over any minor under the age of 18 who has committed a felony. Although an adjudication is not a criminal proceeding, an appellate court takes guidance from the criminal laws of Nebraska in reviewing the same. *In re Adrian B.*, 11 Neb. App. 656, 658 N.W.2d 722 (2003). A finding and adjudication under § 43-247(2) can be made only upon proof beyond a reasonable doubt. Neb. Rev. Stat. § 43-279(2) (Reissue 2008).

Section 28-319(1)(a) provides that a person who subjects another person to sexual penetration without the consent of the victim is guilty of sexual assault in the first degree. Branden's argument in support of this assignment of error is premised on the fact that without his confession, there is no evidence of sexual penetration. We have already determined that the juvenile court did not err in overruling Branden's motion to suppress. The evidence at the adjudication hearing showed that Branden used one finger and touched K.I. on the inside of her vaginal area for one to two seconds. The juvenile court did not err in finding sufficient evidence to adjudicate Branden as a juvenile within the meaning of § 43-247(2).

We note the State's argument that the juvenile court erred in failing to admit Christ-Anderson's testimony about K.I.'s disclosures during therapy. In the absence of a specific statutory authorization, the State, as a general rule, has no right to appeal an adverse ruling in a criminal case. *State v. Hood*, 23 Neb. App. 208, 869 N.W.2d 383 (2015). We do not consider this argument further.

## CONCLUSION

The juvenile court did not err in overruling Branden's motion to suppress or in adjudicating him as a juvenile under § 43-247(2).

AFFIRMED.